# United States Court of Appeals for the Third Circuit

UNITED STATES

v.

DANIEL RUTHERFORD

On Appeal from the United States
District Court for the Eastern District of Pennsylvania (Philadelphia),
No. 2:05-cr-00126-JMY-1, Hon. John M. Younge

## APPELLANT'S OPENING BRIEF

Justin B. Berg
Alex P. Treiger
Geoffrey J.H. Block
KELLOGG, HANSEN, TODD,
   FIGEL & FREDERICK, P.L.L.C.
1615 M Street, N.W., Suite 400
Washington, D.C. 20036
(202) 326-7900
jberg@kellogghansen.com
atreiger@kellogghansen.com
gblock@kellogghansen.com

*Counsel for Defendant-Appellant*

January 31, 2024

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ................................................................ iv

INTRODUCTION ............................................................................. 1

JURISDICTIONAL STATEMENT ................................................... 4

STATEMENT OF THE ISSUES ....................................................... 4

STATEMENT OF RELATED CASES ............................................... 5

STATEMENT OF THE CASE ........................................................... 6

I.    Legal Background ................................................................... 6

      A.   Congress Passes The Sentencing Reform Act of 1984 ........ 6

      B.   Congress Enacts The Compassionate Release Statute As Part
           Of The Sentencing Reform Act ............................................ 7

      C.   Compassionate Release Languishes Under BOP Control ..... 8

      D.   Congress Expands Compassionate Release In 2018.  Courts
           Define "Extraordinary and Compelling" Themselves ........... 9

II.   This Case ............................................................................... 12

      A.   Mr. Rutherford Receives A 42-Year Sentence Because The
           Court Had To Stack His Contemporaneous § 924(c) Convictions ..... 12

      B.   The First Step Act Eliminates Stacking Under § 924(c) ....... 13

      C.   Proceeding Pro Se, Mr. Rutherford Seeks Compassionate Release ... 14

      D.   Mr. Rutherford Appeals; The Government Moves For Summary
           Affirmance; This Court Orders Merits Briefing ................... 16

SUMMARY OF ARGUMENT ......................................................... 18

STANDARD OF REVIEW .............................................................. 19

ARGUMENT ....................................................................................20

I.    The Policy Statement Applies To Mr. Rutherford's Appeal.........................20

II.   The Policy Statement, Not *Andrews*, Controls.............................................23

      A.    The Policy Statement Is Binding..........................................................24

      B.    The Policy Statement Controls Over Prior Circuit Precedent ...........26

      C.    *Andrews* Does Not Control ..................................................................28

III.  The Government's Attack On The Policy Statement Lacks Merit ..............29

      A.    The Phrase "Extraordinary and Compelling" Is Ambiguous..............30

      B.    The Policy Statement Comports With The Sentencing Reform
            Act ....................................................................................................33

            1.    Text ....................................................................................34

            2.    Statutory Context ...............................................................39

            3.    History and Purpose............................................................40

      C.    The First Step Act Does Not Foreclose The Policy Statement..........44

IV.   The Court Should Remand For Further Proceedings ...................................50

CONCLUSION .................................................................................................51

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF FILING AND SERVICE

CERTIFICATE OF BAR MEMBERSHIP

# TABLE OF AUTHORITIES

Page

## CASES

*Baby Food Antitrust Litig., In re,*
    166 F.3d 112 (3d Cir. 1999) ....................................................... 38

*Barber v. Thomas,*
    560 U.S. 474 (2010) ................................................................... 6

*Barna v. Bd. of Sch. Dirs. of Panther Valley Sch. Dist.,*
    877 F.3d 136 (3d Cir. 2017) .................................................. 21, 22

*Batterton v. Francis,*
    432 U.S. 416 (1977) ......................................................... 27, 30, 31

*Bradley v. Sch. Bd. of Richmond,*
    416 U.S. 696 (1974) ................................................................. 20

*Braxton v. United States,*
    500 U.S. 344 (1991) ......................................................... 26, 27, 28

*Buck v. Davis,*
    580 U.S. 100 (2017) ................................................................. 42

*Carpenter v. Wabash Ry. Co.,*
    309 U.S. 23 (1940) ................................................................... 20

*Concepcion v. United States,*
    597 U.S. 481 (2022) ................................................ 24, 43, 44, 46, 47

*Cox v. Horn,*
    757 F.3d 113 (3d Cir. 2014) .................................................. 38, 42

*Cuozzo Speed Techs., LLC v. Lee,*
    579 U.S. 261 (2016) ................................................................. 30

*Dean v. United States,*
    581 U.S. 62 (2017) .............................................................. 45, 47

*Dillon v. United States,*
    560 U.S. 817 (2010) ....................................................... 6, 7, 24, 25

*District of Columbia v. Wesby*,
 583 U.S. 48 (2018) ..................................................................... 37

*Guerrant v. United States*,
 142 S. Ct. 640 (2022) ................................................................ 26

*Gun Owners of Am., Inc. v. Garland*,
 19 F.4th 890 (6th Cir. 2021) ..................................................... 30

*Halsey v. Pfeiffer*,
 750 F.3d 273 (3d Cir. 2014) ...................................................... 38

*Henderson v. United States*,
 568 U.S. 266 (2013) ............................................................. 20, 21

*Hudson United Bank v. LiTenda Mortg. Corp.*,
 142 F.3d 151 (3d Cir. 1998) ...................................................... 21

*Iverson v. United States*,
 973 F.3d 843 (8th Cir. 2020) ..................................................... 48

*Jama v. Immigration & Customs Enf't*,
 543 U.S. 335 (2005) ................................................................. 45

*Johnson v. Folino*,
 705 F.3d 117 (3d Cir. 2013) ...................................................... 38

*Kedra v. Schroeter*,
 876 F.3d 424 (3d Cir. 2017) ...................................................... 21

*Kemp v. United States*,
 596 U.S. 528 (2022) ................................................................. 42

*Kimbrough v. United States*,
 552 U.S. 85 (2007) ................................................. 6, 26, 33, 45

*Kugler v. Helfant*,
 421 U.S. 117 (1975) ............................................................. 30, 31

*Longoria v. United States*,
 141 S. Ct. 978 (2021) ................................................................ 26

*McClinton v. United States*,
143 S. Ct. 2400 (2023).................................................................. 26

*Medtronic, Inc. v. Lohr*,
518 U.S. 470 (1996)..................................................................... 32

*Mirza v. Ins. Adm'r of Am., Inc.*,
800 F.3d 129 (3d Cir. 2015) ........................................................ 21

*Mistretta v. United States*,
488 U.S. 361 (1989)....................................................................... 6

*Mitchell v. Forsyth*,
472 U.S. 511 (1985)..................................................................... 22

*Pepper v. United States*,
562 U.S. 476 (2011)..................................................................... 43

*Peugh v. United States*,
569 U.S. 530 (2013)....................................................................... 6

*Polites v. United States*,
364 U.S. 426 (1960)..................................................................... 42

*Rita v. United States*,
551 U.S. 338 (2007)..................................................................... 32

*Robers v. United States*,
572 U.S. 639 (2014)..................................................................... 25

*Rodriguez v. United States*,
480 U.S. 522 (1987)..................................................................... 45

*Rosen v. Unilever U.S., Inc.*,
2010 WL 4807100 (N.D. Cal. May 3, 2010)................................. 36

*Satterfield v. Dist. Att'y of Phila.*,
872 F.3d 152 (3d Cir. 2017) ................................................... 38, 42

*Setser v. United States*,
566 U.S. 231 (2012)..................................................................... 42

*SIH Partners LLLP v. Comm'r*,
923 F.3d 296 (3d Cir. 2019) .......................................................... 30

*Smiley v. Citibank (S.D.), N.A.*,
517 U.S. 735 (1996).............................................................. 31, 32

*Tapia v. United States*,
564 U.S. 319 (2011).................................................................. 39

*Thorpe v. Hous. Auth. of Durham*,
393 U.S. 268 (1969).................................................................. 20

*Union Pac. R.R. Co. v. Bhd. of Locomotive Eng'rs*,
558 U.S. 67 (2009).................................................................... 23

*United States v. Andrews*,
12 F.4th 255 (3d Cir. 2021) .......................... 1, 4, 9, 10, 15, 21, 28, 29, 31, 47

*United States v. Berberena*,
694 F.3d 514 (3d Cir. 2012) .................................................... 24, 25

*United States v. Booker*,
543 U.S. 220 (2005)................................................................... 7

*United States v. Brooker*,
976 F.3d 228 (2d Cir. 2020) .................................... 8, 9, 10, 35, 39

*United States v. Bryant*,
996 F.3d 1243 (11th Cir. 2021) .................................................... 25

*United States v. Caballero*,
936 F.2d 1292 (D.C. Cir. 1991).................................................... 29

*United States v. Carter*,
2024 WL 136777 (E.D. Pa. Jan. 12, 2024)...................................... 22

*United States v. Chen*,
48 F.4th 1092 (9th Cir. 2022) ............................................ 10, 39, 47

*United States v. Crandall*,
25 F.4th 582 (8th Cir. 2022)................................................... 10, 25

*United States v. Diaco*,
 457 F. Supp. 371 (D.N.J. 1978) ................................................................. 41

*United States v. Diaz*,
 592 F.3d 467 (3d Cir. 2010) .................................................................... 32

*United States v. Dominguez*,
 296 F.3d 192 (3d Cir. 2002) .................................................................... 37

*United States v. Fitzhugh*,
 954 F.2d 253 (5th Cir. 1992) ................................................................... 29

*United States v. Honken*,
 184 F.3d 961, 969 (8th Cir. 1999) ............................................................ 31

*United States v. Hunter*,
 12 F.4th 555 (6th Cir. 2021) .................................................................... 31

*United States v. Jackson*,
 964 F.3d 197 (3d Cir. 2020) ........................................................ 19, 48, 49

*United States v. Jenkins*,
 50 F.4th 1185 (D.C. Cir. 2022) ..................................................... 10, 25, 32

*United States v. Johnson*,
 899 F.3d 191 (3d Cir. 2018) .................................................................... 20

*United States v. Joshua*,
 976 F.2d 844 (3d Cir. 1992) .................................................................... 33

*United States v. Keller*,
 666 F.3d 103 (3d Cir. 2011) .................................................................... 32

*United States v. Marmolejos*,
 140 F.3d 488 (3d Cir. 1998) .................................................................... 27

*United States v. Maumau*,
 993 F.3d 821 (10th Cir. 2021) ................................................................. 32

*United States v. McCall*,
 56 F.4th 1048 (6th Cir. 2022 .......................................................... 10, 32

*United States v. McCoy*,
  981 F.3d 271 (4th Cir. 2020) ..................................................... 10, 25, 29, 41

*United States v. McGee*,
  992 F.3d 1035 (10th Cir. 2021) ............................................................ 10, 32

*United States v. McGlory*,
  968 F.2d 309 (3d Cir. 1992 ..................................................................... 38

*United States v. McMaryion*,
  2023 WL 4118015 (5th Cir. June 22, 2023) ............................................. 10

*United States v. Mitchell*,
  38 F.4th 382 (3d Cir. 2022) ............................................................... 31, 32

*United States v. O'Hagan*,
  521 U.S. 642 (1997) ......................................................................... 29, 30

*United States v. Perez*,
  5 F.4th 390 (3d Cir. 2021) ....................................................................... 32

*United States v. Rutherford*,
  236 F. App'x 835 (3d Cir. 2007) ...................................................... 5, 12, 13

*United States v. Ruvalcaba*,
  26 F.4th 14 (1st Cir. 2022) ............................................... 10, 25, 29, 40, 48

*United States v. Savani*,
  733 F.3d 56 (3d Cir. 2013) ................................................................. 27, 29

*United States v. Schooner Peggy*,
  5 U.S. (1 Cranch) 103 (1801) ............................................................. 20, 21

*United States v. Stewart*,
  86 F.4th 532 (3d Cir. 2023) ............................................................... 28, 29

*United States v. Thacker*,
  4 F.4th 569 (7th Cir. 2021) ..................................................................... 10

*United States v. Vaughn*,
  62 F.4th 1071 (7th Cir. 2023) ............................................................ 37, 38

*United States v. Ware*,
     694 F.3d 527 (3d Cir. 2012) ......................................................... 27

*United States v. Williams*,
     65 F.4th 343 (7th Cir. 2023) ........................................................ 32

*Wis. Cent. Ltd. v. United States*,
     138 S. Ct. 2067 (2018) ........................................................... 34, 48

## CONSTITUTION

U.S. Const. amend. VI ........................................................................ 7

## STATUTES

Sentencing Reform Act of 1984, Pub. L. No. 98-473, 98 Stat. 1837 ...................... 6

     § 211, 98 Stat. at 1987 ............................................................ 6

First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194 ............................. 9

     § 401(c), 132 Stat. at 5221 ............................................. 44, 48, 49

     § 403(a), 132 Stat. at 5221-22 ............................................... 13, 44

     § 403(b), 132 Stat. at 5222 .......................................... 13, 44, 48, 49

     § 404, 132 Stat. at 5222 ................................................... 46, 47

     § 404(a), 132 Stat. at 5222 ...................................................... 49

     § 603(b), 132 Stat. at 5239 ...................................................... 9

18 U.S.C. § 924(c) ............................................... 12, 13, 35, 44, 46

18 U.S.C. § 924(c)(1) ............................................................ 12, 13

18 U.S.C. § 924(c)(1)(A)(ii) ......................................................... 13

18 U.S.C. § 924(c)(1)(D)(ii) ......................................................... 13

18 U.S.C. § 1951(a) .................................................................. 12

18 U.S.C. § 3231 ..................................................................... 4

18 U.S.C. § 3553(a) ......................................................... 16, 17, 22, 46

18 U.S.C. § 3582(c)(1) .................................................................... 25

18 U.S.C. § 3582(c)(1)(A) ............................................. 7, 8, 24, 40, 42

18 U.S.C. § 3582(c)(1)(A)(i) ........................... 1, 4, 7, 8, 14, 23, 34, 47

18 U.S.C. § 3582(c)(2) .............................................................. 24, 25

18 U.S.C. § 4205(g) ....................................................................... 41

28 U.S.C. § 994(a)(2)(C) ............................................................... 24

28 U.S.C. § 994(p) ........................................................................ 11

28 U.S.C. § 994(t) ............................................... 8, 24, 39, 40, 44, 47, 49

28 U.S.C. § 1291 ............................................................................. 4

## RULE

Fed. R. Civ. P. 60(b)(6)........................................................... 38, 42

## LEGISLATIVE MATERIALS

*Hearing on S. 829 Before the S. Subcomm. on Crim. L. of the S. Comm. on the Judiciary*, 98th Cong. 95 (1983) ........................................... 41

S. Rep. No. 98-225 (1983), *as reprinted in* 1983 U.S.C.C.A.N. 3182 .............. 7, 40

## OTHER AUTHORITIES

88 Fed. Reg. 28254 (May 3, 2023) ........................................... 11, 35, 41

Ruggero J. Aldisert, *Logic for Lawyers: A Guide to Clear Legal Thinking* (3d ed. 1997)........................................... 36

Black's Law Dictionary (11th ed. 2019) ...................................... 35

Black's Law Dictionary (5th ed. 1979) ............................... 34, 35, 36

Br. for the United States, *United States v. Andrews*, No. 20-2768 (3d Cir. Nov. 23, 2020), ECF No. 16 ...................................... 25

Br. for United States in Opp'n to Cert., *Jarvis v. United States*,
No. 21-568 (U.S. Dec. 8, 2021) ............................................................. 10, 25

Fed. Bureau of Prisons, *Statistics* (Jan. 25, 2024),
https://www.bop.gov/about/statistics/population_statistics.jsp,
[https://perma.cc/2HR6-YM26] ................................. 35

Gov't Letter in Opp'n to Mot., *United States v. Andrews*,
No. 2:05-cr-00280, ECF No. 293 (E.D. Pa. Jan. 14, 2024)........................ 22

Gov't Resp. in Opp'n:

    *United States v. Andrews*, No. 2:05-cr-00280-GJP,
    ECF. No. 287 (E.D. Pa. Nov. 16, 2023) ...................................................... 22

    *United States v. Carter*, No. 2:07-cr-00374-WB,
    ECF No. 407 (E.D. Pa. Nov. 16, 2023) ................................ 30, 36, 44, 47, 48

    *United States v. Skeeters*, No. 2:05-cr-530-HB,
    ECF No. 136 (E.D. Pa. Dec. 27, 2023) ...................................................... 23

Mem. for United States in Opp'n to Grant of Cert.:

    *Thacker v. United States*, No. 21-877 (U.S. Feb. 14, 2022)........................ 11

    *Watford v. United States*, No. 21-551 (U.S. Dec. 15, 2021) .................. 10-11

    *Williams v. United States*, No. 21-767 (U.S. Jan. 24, 2022) ...................... 11

U.S. Sent'g Comm'n., *Estimate of the Impact of Selected
Sections of S. 1014, The First Step Act Implementation Act
of 2021* (Oct. 2021), https://perma.cc/8VC8-25A7 ...................................... 35

Antonin Scalia & Bryan A. Garner, *Reading Law* (1st ed. 2012) ........................ 50

U.S.S.G. § 1B1.13 cmt. n.1 (Nov. 1, 2007) ............................................................. 8

U.S.S.G. § 1B1.13(b)(6) ................................................. 4, 11, 23, 24, 28, 33, 35, 49

U.S.S.G. Suppl. to App. C., amend. 799 (Aug. 1, 2016)...................................... 8, 9

Webster's Third New Int'l Dictionary (1981) .................................................. 34, 35

# INTRODUCTION

In 2021, Daniel Rutherford filed a motion for a sentence reduction under the "compassionate release" statute, 18 U.S.C. § 3582(c)(1)(A)(i), which permits sentence reductions if (among other things) an "extraordinary and compelling" reason justifies the reduction. Mr. Rutherford argued that a nonretroactive change in sentencing law was an extraordinary and compelling reason. On April 26, 2023, the district court denied the motion based on *United States v. Andrews*, 12 F.4th 255 (3d Cir. 2021), which held that a nonretroactive change in law is not, by itself, an extraordinary and compelling reason for a sentence reduction.

The next day, the United States Sentencing Commission issued a policy statement providing that courts *can* consider nonretroactive changes in law—in limited circumstances, and when paired with other context-specific factors. The questions in this appeal are whether (1) the policy statement applies here because it became effective while the appeal was pending; and (2) if so, whether it displaces *Andrews*. The answer to both questions is yes. In recent filings around the country, the government has raised a third issue: whether the policy statement exceeds the Commission's statutory authority. The answer to that question is no.

*First*, the policy statement applies here and this Court should address its effect. As a general rule, appellate courts apply the law in effect at the time they render their decisions. The policy statement took effect November 1, 2023. It

therefore applies here.  And this Court routinely addresses purely legal issues in the first instance—especially when the issue is of public importance, is recurring, or promotes judicial efficiency.  This question is tremendously important.  It is also recurring: since November 1, 2023, it has already been briefed in at least 12 district courts in this Circuit alone.  And because it involves the continuing validity of this Court's precedent, this Court is best situated to address it.

*Second*, the policy statement controls over *Andrews*.  Congress declined to define the words "extraordinary and compelling."  It instead expressly delegated that task to the Commission and made clear that the Commission's policy statements bind courts.  This Court has repeatedly held that when a panel construes an ambiguous phrase one way and the Commission then construes it in a different way, the Commission's reading controls.  That principle applies with particular force here, because Congress declined to define the relevant phrase and expressly delegated authority to the Commission to do so.

*Third*, the policy statement falls within the Commission's statutory authority.  Because this case involves an express delegation, the Commission's reading controls unless manifestly contrary to the statute granting it authority. Here, that statute is the Sentencing Reform Act of 1984—which created compassionate release and delegated power to the Commission to define the phrase "extraordinary and compelling."  Nothing in that phrase unambiguously forecloses

the policy statement—indeed, *Andrews* described the phrase as "amorphous" and "ambiguous." And the words "extraordinary" and "compelling" are capacious. The policy statement fits comfortably within their contours.

The government has also taken the position that the policy statement conflicts with the First Step Act of 2018—which created the nonretroactive change relevant to Mr. Rutherford's motion. But that argument is wrong, because the First Step Act says nothing about what justifies compassionate release and Congress does not legislate through silent implication.

For all these reasons, this Court should reverse and remand to allow Mr. Rutherford to prove he is eligible for relief under the new policy statement.

## JURISDICTIONAL STATEMENT

The district court denied Mr. Rutherford's motion for compassionate release on April 26, 2023. JA11. It had subject matter jurisdiction pursuant to 18 U.S.C. § 3231. Mr. Rutherford timely filed a notice of appeal on May 10, 2023. JA12. This Court has appellate jurisdiction under 28 U.S.C. § 1291.

## STATEMENT OF THE ISSUES

1.    Should this Court address—in the first instance on appeal—the effect of the Commission's new policy statement, § 1B1.13(b)(6), on Mr. Rutherford's compassionate release motion?

2.    Does the new policy statement effectively abrogate *United States v. Andrews*, 12 F.4th 255 (3d Cir. 2021), such that district courts may consider nonretroactive changes, together with a defendant's unique circumstances, when deciding whether "extraordinary and compelling reasons" justify a sentence reduction under 18 U.S.C. § 3582(c)(1)(A)(i)?

**STATEMENT OF RELATED CASES**

In 2006, Mr. Rutherford appealed his judgment of conviction. *United States v. Rutherford*, No. 06-1437 (3d Cir.). This Court affirmed. *United States v. Rutherford*, 236 F. App'x 835 (3d Cir. 2007). In 2010, Mr. Rutherford appealed a denial of a motion to vacate his conviction under 28 U.S.C. § 2255. *United States v. Rutherford*, No. 10-2122 (3d Cir.). On appeal, Mr. Rutherford moved for a certificate of appealability, *id.* Doc. 003110157762 (3d Cir. May 21, 2010). This Court dismissed the appeal. *Id.* Doc. 003110281009 (3d Cir. Sept. 13, 2010).

In 2005, Mr. Rutherford's co-defendant, Elijah Smith, appealed from his final judgment. *United States v. Smith*, No. 05-5028 (3d Cir.). On August 11, 2006, this Court granted the government's motion to dismiss the appeal due to an appellate waiver. *See id.* (3d Cir. Aug. 11, 2006) (docket text only). In November 2023, Mr. Smith appealed a denial of his motion to vacate his conviction under 28 U.S.C. § 2255. *See United States v. Smith*, No. 23-3075 (3d Cir.). On November 28, 2023, the district court denied Mr. Smith's motion for a certificate of appealability. *See id.* ECF No. 6 (3d Cir. Dec. 20, 2023). On January 3, 2024, Mr. Smith requested that this Court grant a certificate of appealability in his appeal. *Id.* ECF No. 10 (3d Cir. Jan. 3, 2024). That request is pending. Mr. Smith's appeal has no bearing on or relevance to the present appeal.

**STATEMENT OF THE CASE**

**I.    Legal Background**

**A.    Congress Passes The Sentencing Reform Act of 1984**

Historically, courts and parole officers shared responsibility for federal sentencing. *See Mistretta v. United States*, 488 U.S. 361, 363-64 (1989). The court imposed the sentence; the parole officer exercised "absolute discretion" over the "actual duration of imprisonment." *Id.* at 364-65. Under this regime, the United States Board of Parole (and later the Parole Commission) could—and "routinely did"—release prisoners before they served half of their sentence. *Barber v. Thomas*, 560 U.S. 474, 482 (2010). But this system lacked uniform, nationwide standards. That lack of uniform guidance led to "[s]erious disparities," which in turn led to widespread criticism. *Mistretta*, 488 U.S. at 365.

Congress ultimately responded by overhauling the federal sentencing system in the Sentencing Reform Act of 1984. *See* Pub. L. No. 98-473, § 211, 98 Stat. 1837, 1987. In place of the Parole Commission, Congress created the United States Sentencing Commission. It directed the Sentencing Commission to "formulate and constantly refine national sentencing standards." *Kimbrough v. United States*, 552 U.S. 85, 108 (2007). It also directed the Commission to issue standards governing sentence-modification proceedings. *Dillon v. United States*, 560 U.S. 817, 826 (2010). Congress made the Commission's "uniform" standards "binding on federal courts." *Peugh v. United States*, 569 U.S. 530, 535 (2013).

6

While the Supreme Court later held that the Commission's mandatory initial-sentencing guidelines violated the Sixth Amendment, *see United States v. Booker*, 543 U.S. 220, 226-27, 233-37 (2005), its standards for sentence-modification proceedings do not, and continue "to bind the courts," *Dillon*, 560 U.S. at 830.

**B.      Congress Enacts The Compassionate Release Statute As Part Of The Sentencing Reform Act**

In enacting the Sentencing Reform Act, Congress recognized that there would be "unusual case[s]" in which "changed circumstances" justify reducing "unusually long sentence[s]." S. Rep. No. 98-225, at 55, 121 (1983), *as reprinted in* 1983 U.S.C.C.A.N. 3182, 3238, 3304. To that end, Congress enacted several "safety valves" through which courts could modify a sentence once imposed. *Id.*

Section 3582(c)(1)(A)(i) is one of those safety valves. Commonly known as the "compassionate release" statute, this provision allows a district court to reduce a prisoner's sentence if (1) "extraordinary and compelling reasons warrant such a reduction" and (2) the "factors set forth in [18 U.S.C. §] 3553 (a)" support the reduction. 18 U.S.C. § 3582(c)(1)(A)(i). The reduction also must be "consistent with applicable policy statements issued by the Sentencing Commission." *Id.* § 3582(c)(1)(A).

Congress did not define the phrase "extraordinary and compelling reasons." It instead instructed the Commission to "promulgat[e] general policy statements regarding the sentencing modification provisions in section 3582(c)(1)(A)" that

"shall describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples." 28 U.S.C. § 994(t). Congress articulated only one limitation: "Rehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason." *Id.*

### C.      Compassionate Release Languishes Under BOP Control

For years, § 3582(c)(1)(A)(i)'s safety valve rarely opened. That was because only the Bureau of Prisons ("BOP") could file a compassionate release motion under § 3582(c)(1)(A), and it rarely did. *United States v. Brooker*, 976 F.3d 228, 231-32 (2d Cir. 2020). As a result, compassionate release motions were infrequently litigated from 1984 to 2018, and scant precedent developed to address what counts as an "extraordinary and compelling reason."

Meanwhile, in 2007, the Commission issued a policy statement identifying several "extraordinary and compelling reasons" for a sentence reduction: terminal illness, severe physical or mental decline, and death or incapacitation of the primary caregiver of a prisoner's child. U.S.S.G. § 1B1.13 cmt. n.1 (Nov. 1, 2007). The Commission also included a catch-all category for "an extraordinary and compelling reason other than, or in combination with" these examples, "[a]s determined" by the BOP. *Id.* In 2016, it added two additional bases—related to age and health of the defendant—and retained the catchall provision. U.S.S.G.

Suppl. to App. C., amend. 799 (Aug. 1, 2016).  By their terms, these policy statements applied only to motions filed by the BOP.

### D.  Congress Expands Compassionate Release In 2018.  Courts Define "Extraordinary and Compelling" Themselves

Over the years, the BOP's failure to file compassionate release motions generated concern and criticism.  *See Brooker*, 976 F.3d at 231.  In response, Congress amended the compassionate release statute in the First Step Act of 2018, allowing prisoners (not just the BOP) to file motions after exhausting administrative remedies.  *See* Pub. L. No. 115-391, § 603(b), 132 Stat. 5194, 5239. With this change, compassionate release motions finally began to reach federal courts.  But the Commission lost a quorum shortly after this change and could not issue an applicable policy statement on what could count as an "extraordinary and compelling reason" for a prisoner-filed motion.  And because its previous policy statements referenced only BOP-filed motions—and had catchall provisions based solely on BOP discretion—courts found the older policy statements inapplicable to prisoner-filed motions.  *See Andrews*, 12 F.4th at 259 (collecting cases).

This first became an issue during the COVID-19 pandemic—which saw a flurry of compassionate release motions arguing that the pandemic was an extraordinary and compelling circumstance.  The government opposed these motions, arguing that the Commission's 2016 policy statement bound courts and did not mention pandemics.  Almost all courts held that the old policy statement

applied only to BOP-filed motions, and that until the Commission weighed in, courts had broad discretion to identify "extraordinary and compelling" reasons when adjudicating prisoner-filed motions. *See*, *e.g.*, *Brooker*, 976 F.3d at 237.

A second issue emerged involving nonretroactive changes in law. The 2018 First Step Act reduced several harsh sentencing schemes for drug and firearms offenses—but applied many of those changes only prospectively. Without an applicable policy statement, the courts of appeals split over whether courts could consider these changes when deciding whether "extraordinary and compelling" circumstances existed. The Third, Sixth, Seventh, Eighth, and D.C. Circuits said no; the First, Fourth, Ninth, and Tenth Circuits said yes.[1] The Department of Justice opposed several certiorari petitions, arguing that the split ought to be "addressed by the Sentencing Commission" in the first instance.[2]

---

[1] *See Andrews*, 12 F.4th at 260-61 (3d Cir.); *United States v. McCall*, 56 F.4th 1048, 1050 (6th Cir. 2022) (en banc); *United States v. Thacker*, 4 F.4th 569, 573-74 (7th Cir. 2021); *United States v. Crandall*, 25 F.4th 582, 585 (8th Cir. 2022); *United States v. Jenkins*, 50 F.4th 1185, 1198-99 (D.C. Cir. 2022). *But see United States v. Ruvalcaba*, 26 F.4th 14, 24 (1st Cir. 2022); *United States v. McCoy*, 981 F.3d 271, 287-88 (4th Cir. 2020); *United States v. Chen*, 48 F.4th 1092, 1094-95 (9th Cir. 2022); *United States v. McGee*, 992 F.3d 1035, 1047 (10th Cir. 2021). The Fifth Circuit issued a precedential opinion joining the side of the Circuits saying "no," but withdrew the opinion after the Commission announced it would be issuing a policy statement on the issue. *See United States v. McMaryion*, 2023 WL 4118015, at *1-2 (5th Cir. June 22, 2023).

[2] Br. for United States in Opp'n to Cert. at 16, *Jarvis v. United States*, No. 21-568 (U.S. Dec. 8, 2021); *see also* Mem. for United States in Opp'n to Grant of

That finally happened on April 27, 2023—when the Commission (now with a quorum) issued a policy statement defining "extraordinary and compelling reasons" for prisoner-filed motions after a notice-and-comment rulemaking period. 88 Fed. Reg. 28254, 28254. Among other things, the Commission "respond[ed] to [the] circuit split" and agreed with the "circuits that authorize a district court to consider non-retroactive changes in the law as extraordinary and compelling circumstances," but "only in narrowly circumscribed circumstances." *Id.* at 28258.

Under the new policy statement, a change in law "may be considered in determining whether the defendant presents an extraordinary and compelling reason, but only where" (1) "a defendant received an unusually long sentence," (2) the defendant "has served at least 10 years of the term of imprisonment," (3) there is a "gross disparity between the sentence being served and the sentence likely to be imposed at the time the motion is filed," and (4) the court gives "full consideration of the defendant's individualized circumstances." U.S.S.G. § 1B1.13(b)(6). Congress did not disapprove the policy statement, so it went into effect on November 1, 2023. *See* 28 U.S.C. § 994(p).

---

Cert. at 2, *Watford v. United States*, No. 21-551 (U.S. Dec. 15, 2021); Mem. for United States in Opp'n to Grant of Cert. at 2, *Williams v. United States*, No. 21-767 (U.S. Jan. 24, 2022); Mem. for United States in Opp'n to Grant of Cert. at 2, *Thacker v. United States*, No. 21-877 (U.S. Feb. 14, 2022).

## II.    This Case

### A.    Mr. Rutherford Receives A 42-Year Sentence Because The Court Had To Stack His Contemporaneous § 924(c) Convictions

In 2003, Mr. Rutherford—then 22 years old—committed two armed robberies in Philadelphia within a five-day period.  JA33-39.  A federal jury convicted him of two counts of Hobbs Act robbery, in violation of 18 U.S.C. § 1951(a), one count of conspiracy to commit Hobbs Act robbery, in violation of 18 U.S.C. § 1951(a), and two counts of using a firearm during a crime of violence, in violation of 18 U.S.C. § 924(c)(1).  *Id.*; JA23 (ECF No. 72).

The district court sentenced Mr. Rutherford to 42.5 years in prison. JA23.  Section 924(c)'s now-discarded "stacking" provision accounted for 32 of those years.  JA2-3.  That provision required the district court to impose a seven-year sentence for Mr. Rutherford's "first" § 924(c) conviction and a consecutive 25-year sentence for his "second" one—even though both counts were brought in the same case.  *Id.*  The court did so, and imposed an additional 125 months for the robbery convictions.  *Id.*

This Court affirmed.  *United States v. Rutherford*, 236 F. App'x 835 (3d Cir. 2007).  Judge Ambro (joined by Judge McKee) wrote separately to observe that the "length" of "Rutherford's 42-year sentence" "would be unthinkable in many state systems for these underlying facts."  *Id.* at 845 (Ambro, J., concurring, joined by McKee, J.).  "By prosecuting Rutherford at the federal

level," Judge Ambro observed, "the Federal Government has effectively incapacitated [him] for the remainder of his adult life." *Id.* Mr. Rutherford (now 42) has spent more than 18 years in prison.

## B. The First Step Act Eliminates Stacking Under § 924(c)

In 2018, Congress passed the First Step Act, which amended § 924(c) to eliminate the "stacking" practice responsible for Mr. Rutherford's lengthy sentence. First Step Act § 403(a), 132 Stat. at 5221-22. The 25-year enhanced sentence under § 924(c) now applies only when a defendant already has a final § 924(c) conviction from a prior proceeding at the time he commits a "second" § 924(c) offense. *Id.*

Under the new regime, Mr. Rutherford would have received a 14-year mandatory minimum for his two § 924(c) convictions—18 years fewer than the 32-year minimum he received in 2006.[3] But the amendment to § 924(c) did not apply retroactively. First Step Act § 403(b), 132 Stat. at 5222.

---

[3] Mr. Rutherford's two § 924(c)(1) counts were for brandishing a firearm. *See Rutherford*, 236 F. App'x at 845 (Ambro, J., concurring). That type of § 924(c)(1) violation triggers a seven-year mandatory minimum, 18 U.S.C. § 924(c)(1)(A)(ii), and the penalties for both counts still run consecutively, *id.* § 924(c)(1)(D)(ii).

## C.     Proceeding Pro Se, Mr. Rutherford Seeks Compassionate Release

For years, Mr. Rutherford has diligently pursued relief under 18 U.S.C.

§ 3582(c)(1)(A)(i) without the help of lawyers.

By letter dated August 3, 2020, Mr. Rutherford asked the district court if it

received his compassionate release motion "base[d] on 'stacking.'"  JA44.  He

received no response.  On February 17, 2021, he filed a handwritten compassionate

release motion.  JA47-56.  This motion was never addressed.  On April 26, 2021,

Mr. Rutherford tried a third time, filing his operative motion (JA57-88) and

arguing that an "extraordinary and compelling" reason for release existed because

he "received an unusually long sentence under a statutory provision that Congress

has since found too punitive."  JA58.[4]

In the motion, Mr. Rutherford pointed out that during his time in prison, he

had completed over 50 educational courses and received positive reviews from

staff.  JA83; JA98-99 (BOP Reentry Plan listing courses).  His mother submitted a

letter on his behalf—pointing out that Mr. Rutherford's sister had passed away and

---

[4] Mr. Rutherford properly exhausted under § 3582(c)(1)(A)(i)'s 30-day "lapse" provision—which allows inmates to file motions if the warden takes longer than 30 days to respond their request.  18 U.S.C. § 3582(c)(1)(A)(i).  JA75. Mr. Rutherford submitted his request to the warden on January 7, 2021.  JA97. The warden denied it on March 2, 2021.  JA95.  The government agreed that Mr. Rutherford "satisfied the administrative exhaustion requirement," JA134, as did the district court,  JA5.  Mr. Rutherford's motion also raised COVID-19 as a basis for compassionate release.  JA83.  He does not press that ground on appeal.

left behind five children that Mr. Rutherford could help care for if released.  JA90-92.  In one of his filings, Mr. Rutherford explained that he had secured employment upon release at a wrench company in York, Pennsylvania.  JA54-55. And Mr. Rutherford's disciplinary records reflected, impressively, that over the last decade (since 2013) he has committed only two minor infractions (phone abuse in 2016 and rudeness to a staff member in 2020).  JA99.  He attributed that success to the religious faith he had developed, which had given him "confidence, self-control, and a guideline to . . . keep myself disciplined."  JA53.

On June 5, 2021, the government recommended staying the motion until the Third Circuit decided *Andrews*, which would address whether nonretroactive changes in sentencing law could constitute an "extraordinary and compelling" circumstance.  JA141-42.  This received no response.  On September 29, 2021, the government filed a supplemental brief informing the court that the Third Circuit held in *Andrews* that nonretroactive changes in sentencing law could not constitute an "extraordinary and compelling" reason for a sentence reduction.  JA145-46 (citing *Andrews*, 12 F.4th at 260-61).   This, too, received no response.

On April 10, 2023, Mr. Rutherford sent a letter to the court asking about his motion. JA158-60.[5] On April 26, 2023, the district court denied Mr. Rutherford's motion, holding that under *Andrews*, his "stacking" argument could not establish an extraordinary and compelling circumstance. JA6-7. The court did not address whether the 18 U.S.C. § 3553(a) sentencing factors favored granting Mr. Rutherford's motion; it rested its decision solely on *Andrews*. *Id.* The next day, the Commission issued its revised policy statement.

### D. Mr. Rutherford Appeals; The Government Moves For Summary Affirmance; This Court Orders Merits Briefing

Mr. Rutherford timely appealed. JA12. On June 20, 2023, the government moved for summary affirmance. ECF. No. 6. Mr. Rutherford (now represented by pro bono counsel) opposed, and requested that the appeal be stayed until the policy statement's effective date, November 1, 2023. ECF. No. 13. The policy statement went into effect on November 1. Mr. Rutherford informed the Court of that development in a Rule 28(j) letter. ECF No. 14.

---

[5] *See* JA159-60 ("Sir I am just goin[g] right to my point. I am ready for the world. . . . I am 41 years old now. I made mistakes earlier[.] . . . Now I see aint nothing like being there for your family. I lost so much. I just want to be there for my love[d] ones. I have a big su[p]port system. I been waiting to hear something on my 'compassion Release motion'[.] [I]ts be[en] 2 years. Godwilling that['s] a good thing. Even if I get what I suppose to get if I was sentence today that will be a blessing. I just want to go home and . . . take care of my family.").

The government responded, arguing that summary affirmance was still appropriate.  ECF No. 15.  The government explained that it believes the policy statement "exceeds the authority of the Sentencing Commission" and therefore "is invalid," *id.* at 2-3, presenting a "complex legal question" that "will soon be raised in thousands of cases throughout the nation," *id.* at 3.  It argued that it was "not appropriate for this Court to address this complex legal question in the first instance," "because if the Court were to deem relief possible, the district court would still have to address" whether relief is warranted under § 3553(a).  *Id.*

On December 8, 2023, this Court denied the government's motion and ordered merits briefing.  ECF No. 16.  It directed the parties to address: "(1) whether this Court should consider the impact of amendments to the Sentencing Guidelines on an 18 U.S.C. § 3582(c) motion in the first instance on appeal"; and "(2) to what extent, if any, the 2023 amendment to § 1B1.13(b) of the Sentencing Guidelines Manual abrogates this Court's decision in *United States v. Andrews*, 12 F.4th 255, 261 (3d Cir. 2021)."  *Id*. at 2.

# SUMMARY OF ARGUMENT

**I.** The Commission's policy statement applies to this appeal. Appellate courts apply the law in effect at the time they render their decision, even if the law develops after the trial court's decision. The policy statement went into effect while this appeal was pending. This Court must therefore apply the policy statement here. And addressing the issue now makes sense, because only this Court can definitively decide the continuing validity of *Andrews*.

**II.** The policy statement, not *Andrews*, controls here. Congress expressly delegated binding authority to the Sentencing Commission to define "extraordinary and compelling." And *Andrews* described that term as "amorphous" and "ambiguous." The Commission's reading would therefore control even if it conflicted with *Andrews*. But there is no conflict. *Andrews* was based on the lack of an applicable policy statement, and now there is an applicable policy statement. So *Andrews* no longer applies.

**III.** The government contends that the policy statement is invalid because it exceeds the Commission's statutory authority. That position is incorrect.

Because this case involves an express delegation, the Commission's reading controls unless manifestly contrary to the statute. The policy statement is not manifestly contrary to either statute the government invokes. *First*, the policy statement is consistent with the text, context, and history of the Sentencing Reform

Act.  The words "extraordinary and compelling" are capacious and flexible—and they invite a holistic focus on whether a *combination* of circumstances can, together, take a case out of the ordinary.  The Commission's approach—which instructs courts to look to a combination of circumstances (not changes in law alone)—adheres to the text of the compassionate release statute.  *Second*, the First Step Act does not foreclose the policy statement because the First Step Act says nothing about what justifies compassionate release, and Congress does not legislate through silent implication.

**STANDARD OF REVIEW**

The Court reviews the district court's decision to deny a sentence reduction for abuse of discretion.  *See United States v. Jackson*, 964 F.3d 197, 201 (3d Cir. 2020).  It reviews questions of statutory construction, however, de novo.  *Id.* Because the issue in this case turns on purely legal questions of statutory interpretation, the appropriate standard of review is de novo.

# ARGUMENT

## I. The Policy Statement Applies To Mr. Rutherford's Appeal

The policy statement became effective while this appeal was pending. This Court directed the parties to address whether it should, in the first instance on appeal, address the impact of the revised policy statement on Mr. Rutherford's compassionate release motion. ECF. No. 16. It must, because appellate courts must apply the law in effect at the time they render their decision. And it should, because only this Court can definitively determine *Andrews*'s continuing validity.

1. When the law develops between a trial-court judgment and an appeal, an appellate court "must apply the law in effect at the time it renders its decision." *United States v. Johnson*, 899 F.3d 191, 199 (3d Cir. 2018) (quoting *Henderson v. United States*, 568 U.S. 266, 271 (2013)). The Supreme Court first established that principle in *United States v. Schooner Peggy*, 5 U.S. (1 Cranch) 103, 110 (1801), and has reaffirmed it repeatedly. *See*, *e.g.*, *Carpenter v. Wabash Ry. Co.*, 309 U.S. 23, 26-27 (1940); *Thorpe v. Hous. Auth. of Durham*, 393 U.S. 268, 281-82 (1969); *Bradley v. Sch. Bd. of Richmond*, 416 U.S. 696, 711 n.14 (1974); *Henderson*, 568 U.S. at 271 ("[T]he general rule . . . is that an appellate court must apply the law in effect at the time it renders its decision."). It applies with "equal force" whether the development is judicial, legislative, or "made by an administrative agency pursuant to legislative authorization." *Thorpe*, 393 U.S. at 282.

The duty to apply current law requires the Court to address the effect of the policy statement on Mr. Rutherford's motion. The district court denied Mr. Rutherford's motion based solely on *Andrews*'s holding that a nonretroactive change in law, alone, could not fit within the "amorphous" and "ambiguous" phrase "extraordinary and compelling." 12 F.4th at 259-61. The Commission has now clarified that statutory ambiguity. The policy statement explains that a change in law *may* (in limited circumstances) be considered when identifying "extraordinary and compelling" reasons for relief. The policy statement is "the law in effect at the time [this Court] renders its decision." *Henderson*, 568 U.S. at 271. It thus "must be obeyed." *Schooner Peggy*, 5 U.S. (1 Cranch) at 110.

**2.** Moreover, this Court regularly decides "purely legal questions" in the first instance "on appeal rather than remand." *Hudson United Bank v. LiTenda Mortg. Corp.*, 142 F.3d 151, 159 (3d Cir. 1998); *see Mirza v. Ins. Adm'r of Am., Inc.*, 800 F.3d 129, 133 n.4 (3d Cir. 2015) ("It is 'generally appropriate' for an appellate court to reach the merits of" a "purely legal question[]" in the "first instance."). That is especially so "where the issue's resolution is of public importance," *Barna v. Bd. of Sch. Dirs. of Panther Valley Sch. Dist.*, 877 F.3d 136, 147 (3d Cir. 2017) (collecting cases), or will "best serve the interests of judicial efficiency," *Kedra v. Schroeter*, 876 F.3d 424, 436 n.5 (3d Cir. 2017).

Whether the policy statement abrogates *Andrews* is a "purely legal question" of tremendous public importance fit for "immediate resolution." *Mitchell v. Forsyth*, 472 U.S. 511, 530 (1985). Not only does that question involve a "novel, important, and recurring" "uncertainty in the law," *Barna*, 877 F.3d at 147[6]; it also presents an issue (the continuing validity of Circuit precedent) that this Court is best situated to address. Indeed, the first district court to discuss the question found itself bound by *Andrews* "[u]nless and until" this Court says otherwise. *United States v. Carter*, 2024 WL 136777, at *5-6 (E.D. Pa. Jan. 12, 2024). It hinders judicial efficiency to send an issue down to the district court that the district court will simply send back up.

The government's litigating posture bolsters the point. In opposing motions filed since November 1, the government has asked district courts to "first address" whether the policy statement "is in fact valid" without briefing the § 3553(a) factors. *See, e.g.*, Gov't Resp. in Opp'n at 6, *United States v. Andrews*, No. 2:05-cr-00280-GJP, ECF. No. 287 (E.D. Pa. Nov. 16, 2023); Gov't Resp. in Opp'n at 5, *United States v. Carter*, No. 2:07-cr-00374-WB, ECF No. 407 (E.D. Pa. Nov. 16, 2023). And it has recently begun asking courts to "withhold ruling" entirely "until

---

[6] The government has briefed the same issue in over 12 cases in the Eastern District of Pennsylvania alone. *See* Gov't Letter in Opp'n to Mot. at 1, *United States v. Andrews*, No. 2:05-cr-00280, ECF No. 293 (E.D. Pa. Jan. 14, 2024).

this issue is resolved by higher courts." Gov't Resp. in Opp'n, at 1 *United States v. Skeeters*, No. 2:05-cr-530-HB, ECF No. 136 (E.D. Pa. Dec. 27, 2023).

Addressing that issue now will provide needed guidance to the several district courts adjudicating compassionate release motions that have been (and will continue to be) filed under § 1B1.13(b)(6). And it will promote uniformity by reducing the chances of conflicting district court decisions. Avoiding the issue, by contrast, would leave district courts—not to mention the government, defense lawyers, and inmates—without definitive guidance, yielding duplicative litigation, disparate decisions, and delay for litigants (like Mr. Rutherford) who may qualify under the policy statement. The Court "can and should resolve" the policy statement's impact on *Andrews* in the first instance. *Union Pac. R.R. Co. v. Bhd. of Locomotive Eng'rs*, 558 U.S. 67, 79 (2009).

## II. The Policy Statement, Not *Andrews*, Controls

The district court denied Mr. Rutherford's motion on the grounds that, under *Andrews*, it could not consider a nonretroactive change in law when deciding whether "extraordinary and compelling reasons" exist under § 3582(c)(1)(A)(i). JA6-7. The Commission, through the policy statement, has now clarified that district courts can consider changes in law when combined with other factors. That policy statement, not *Andrews*, governs here.

## A.      The Policy Statement Is Binding

Congress charged the Commission in the Sentencing Reform Act with issuing policy statements on the "application of the guidelines or any other aspect of sentencing," including "sentence modification."  28 U.S.C. § 994(a)(2)(C). Consistent with that approach, Congress did not define what "extraordinary and compelling reasons" means, except to exclude "[r]ehabilitation . . . alone." *Id.* § 994(t).  Instead, it explicitly instructed the Commission to "describe what should be considered extraordinary and compelling." *Id.*  The Commission exercised that statutory authority when it promulgated § 1B1.13(b)(6).

That new policy statement is binding.  Section 3582(c)(1)(A) requires courts to act "consistent with" "applicable policy statements."  This language "requir[es] courts to abide by the Sentencing Commission's policy statements." *Concepcion v. United States*, 597 U.S. 481, 495 (2022).  A court that acts "inconsistent with a policy statement" thus "violate[s] § 3582(c)'s directive." *United States v. Berberena*, 694 F.3d 514, 522 (3d Cir. 2012).

The Supreme Court's decision in *Dillon v. United States* reinforces this conclusion.  There, the Court addressed the effect of the Commission's policy statement implementing 18 U.S.C. § 3582(c)(2), which allows sentence reductions based on a Guidelines amendment "'if such a reduction is consistent with' applicable Commission policy statements." *Dillon v. United States*, 560 U.S. 817,

819 (2010) (quoting 18 U.S.C. § 3582(c)(2)).  The Court held that this language "requires" courts "to follow the Commission's instructions . . . to determine the prisoner's eligibility for a sentence modification."  *Id.* at 827.  Section 3582(c)(1)'s identical language has the same effect.  *See Robers v. United States*, 572 U.S. 639, 643 (2014) ("identical words" in a statute "have the same meaning").

This Court has recognized that the Commission's policy statements defining "extraordinary and compelling" bind "district courts just like" those addressing § 3582(c)(2).  *Berberena*, 694 F.3d at 521 n.10.  So have several other Circuits.  *See*, *e.g.*, *Jenkins*, 50 F.4th at 1193 ("Section 1B1.13 binds courts in cases where it is 'applicable.'" (citation omitted)); *United States v. Crandall*, 25 F.4th 582, 584 (8th Cir. 2022) (similar).[7]

The government, for its part, agrees that policy statements describing "the circumstances that permit consideration for compassionate release" are "binding."  Br. for United States at 22, *United States v. Andrews*, No. 20-2768 (3d Cir. Nov. 23, 2020), ECF No. 16; *see*, *e.g.*, Br. for United States in Opp'n to Cert. at 18, *Jarvis v. United States*, No. 21-568 (U.S. Dec. 8, 2021) ("a new policy statement"

---

[7] *See also Ruvalcaba*, 26 F.4th at 23-24 (courts are "required to ensure that their determinations of extraordinary and compelling reasons are consistent with" applicable policy statement); *United States v. Bryant*, 996 F.3d 1243, 1251-52 (11th Cir. 2021) (statute's "consistent-with requirement makes the relevant policy statements binding on district courts"); *McCoy*, 981 F.3d at 284 (similar).

addressing prisoner-filed motions would be "binding on district courts").  The new policy statement is no different.

### B.  The Policy Statement Controls Over Prior Circuit Precedent

The policy statement would control even in the face of a previous panel decision to the contrary.  Congress created the Commission to provide uniform standards governing sentencing proceedings, *Kimbrough v. United States*, 552 U.S. 85, 108 (2007), and therefore "necessarily contemplated that the Commission would periodically review the work of the courts" and resolve "conflicting judicial decisions," *Braxton v. United States*, 500 U.S. 344, 348 (1991) (declining to address Circuit split because the Commission had begun the rulemaking process to resolve the split).  Sitting Justices have often acknowledged the same.[8]

This Court has also repeatedly held that the "Commission, like an administrative agency, has the authority to overturn precedent in order to clarify an

---

[8] *See* Statement Respecting Denial of Certiorari, *Longoria v. United States*, 141 S. Ct. 978, 979 (2021) (Sotomayor, J., joined by Gorsuch, J.) (emphasizing the "need for clarification from the Commission" to resolve "an important and longstanding split among the Courts of Appeals over the proper interpretation" of a Guideline); Statement Respecting Denial of Certiorari, *Guerrant v. United States*, 142 S. Ct. 640, 640-41 (2022) (Sotomayor, J., joined by Barrett, J.) ("It is the responsibility of the Sentencing Commission to address" a "split among the Courts of Appeals over the proper definition of a 'controlled substance offense'" under the Guidelines); Statement Respecting Denial of Certiorari, *McClinton v. United States*, 143 S. Ct. 2400, 2403 (2023) (Kavanaugh, J., joined by Gorsuch & Barrett, JJ.) (justifying denial of certiorari on Circuit split regarding sentencing-law issue because "the Sentencing Commission is currently considering the issue").

ambiguity in the law and to promote uniformity in the application of a statute."
*United States v. Marmolejos*, 140 F.3d 488, 492-93 (3d Cir. 1998). In those
situations, this Court has explained, "we are obligated to adhere to the
Commission's [intervening] definition." *United States v. Savani*, 733 F.3d 56, 58,
62 (3d Cir. 2013) (holding that intervening "binding" Commission amendment
"superseded" prior panel decision); *United States v. Joshua*, 976 F.2d 844, 853-56
(3d Cir. 1992) (similar); *cf. United States v. Ware*, 694 F.3d 527, 534 n.4 (3d Cir.
2012) (prior precedent "would not be controlling" in light of intervening
Commission definition of ambiguous phrase, because "[i]t is clear" "that the
Sentencing Commission may" "abrogate[] prior judicial decisions" to "resolve
conflict[s]" (citing *Braxton*, 500 U.S. at 348)).

The same principle applies here with even more force because Congress left
"extraordinary and compelling" undefined and explicitly delegated to the
Commission the power to define it. "In a situation of this kind, Congress entrusts
to the [Commission,] rather than to the courts, the primary responsibility for
interpreting the statutory term." *Batterton v. Francis*, 432 U.S. 416, 425 (1977).
"In exercising that responsibility," the Commission's definitions carry "legislative
effect," and a "reviewing court is not free to set aside" that definition "simply
because it would have interpreted the statute in a different manner." *Id.*

### C. *Andrews* Does Not Control

This Court's decision in *Andrews* does not control.  *Andrews* was based on the *lack* of an "applicable" policy statement.  By the decision's own terms, it aimed only to resolve the "temporary anomaly" created by the fact that the Commission had not issued an "applicable" policy statement at the time the case was decided.  *Andrews*, 12 F.4th at 259 n.4.  There is now an applicable policy statement.  Because the "temporary anomaly" is resolved, *Andrews* does not extend to this situation.  *See United States v. Stewart*, 86 F.4th 532, 533 (3d Cir. 2023) (*Andrews* "form[ed] a working definition" in absence of a binding policy statement).

*Andrews*, moreover, did not address the circumstances described in the new policy statement.  The argument *Andrews* rejected was that a nonretroactive change, by itself, "simultaneously creat[es] an extraordinary and compelling reason for early release."  12 F.4th at 261.  The Commission agrees: changes in law alone do not suffice under the new policy statement.  Courts may only consider them alongside other factors.  U.S.S.G. § 1B1.13(b)(6).  So there is no conflict.

But even if there were, the Commission's reading would control.  The Commission has the power to resolve Circuit splits, *Braxton*, 500 U.S. at 348, and this Court and others have repeatedly deferred to intervening enactments by the Commission that clarify ambiguous statutes even in the face of an earlier, conflicting judicial construction.  *Supra* at 27 (collecting cases); *see also*, *e.g.*,

*United States v. Caballero*, 936 F.2d 1292, 1298-99 (D.C. Cir. 1991); *United States v. Fitzhugh*, 954 F.2d 253, 255 (5th Cir. 1992).

That is what has happened here. *Andrews* itself described the relevant statutory phrase, "extraordinary and compelling," as "amorphous" and "ambiguous." 12 F.4th at 260. The Commission used its expressly delegated authority to define that ambiguity. As a result, the Commission's policy statement controls over *Andrews*. *Savani*, 733 F.3d at 58, 62; *see also Ruvalcaba*, 26 F.4th at 23-24 (explaining that the "situation is fluid," and that once "the Sentencing Commission issues updated guidance," "courts addressing such motions . . . will be required to ensure that their determinations of extraordinary and compelling reasons are consistent with that guidance"); *McCoy*, 981 F.3d at 284 (similar); *Stewart*, 86 F.4th at 535 & n.2 (noting that *Andrews*'s "validity" "remains undisturbed" only "[a]bsent changes in the applicable policy statement[ ]").

## III. The Government's Attack On The Policy Statement Lacks Merit

The government contends that the policy statement is invalid because it exceeds the Commission's statutory authority. ECF No. 15, at 2-3. It argues that the policy statement is foreclosed by the Sentencing Reform Act and the First Step Act of 2018. That position is incorrect.

This case involves an express delegation. Express delegations require courts to apply "more than mere deference or weight." *United States v. O'Hagan*,

521 U.S. 642, 673 (1997) (quoting *Batterton*, 432 U.S. at 426).[9] Rather, the

Commission's determinations are "controlling" unless "manifestly contrary to the

statute." *SIH Partners LLLP v. Comm'r*, 923 F.3d 296, 304 (3d Cir. 2019).

The policy statement is not manifestly contrary to any statute. And the

government's attack on the policy statement lacks merit for three reasons. *First*,

the operative textual phrase, "extraordinary and compelling," is ambiguous.

*Second*, the policy statement is consistent with (not manifestly contrary to) the

Sentencing Reform Act. *Third*, nothing in the First Step Act mentions what

justifies compassionate release, let alone forecloses the policy statement.

## A.  The Phrase "Extraordinary and Compelling" Is Ambiguous

The government must show that the compassionate release statute

unambiguously forecloses the policy statement. *See* Gov't Opp'n Br. at 21, *United

States v. Carter*, No. 2:07-cr-00374-WB, ECF 407 (E.D. Pa. Nov. 16, 2023)

("*Carter* Opp. Br.") (claiming *Andrews* "remains binding" "because 'a precedent

holding a statute to be unambiguous forecloses a contrary agency interpretation.'").

---

[9] An "*express* delegation . . . does not trigger '*Chevron* deference.' Well before *Chevron*, the Supreme Court noted that it should defer to a regulation . . . when Congress expressly delegated policymaking authority to the agency." *Gun Owners of Am., Inc. v. Garland*, 19 F.4th 890, 917-18 (6th Cir. 2021) (en banc) (Murphy, J., dissenting). "*Chevron*'s fiction"—that "ambiguity in a statutory term is best construed as an implicit delegation"—is not implicated when Congress has provided "an express and clear conferral of authority" in the form of an explicit delegation. *Cuozzo Speed Techs., LLC v. Lee*, 579 U.S. 261, 286 (2016) (Thomas, J., concurring). This case therefore does not depend on *Chevron*.

The government cannot make that showing because *Andrews* already recognized that the phrase "extraordinary and compelling" is "amorphous" and "ambiguous." 12 F.4th at 260. So have other Circuits. *See United States v. Hunter*, 12 F.4th 555, 566 (6th Cir. 2021) ("extraordinary and compelling" is "vague and amorphous"). And so has the government. *See* JA190, Oral Arg. Tr. at 30:22-23, *United States v. Carter*, No. 2:07-cr-00374-WB (E.D. Pa. Jan. 8, 2024) ("Extraordinary and compelling is not the most unambiguous statement that anyone has ever made."). For good reason: the "very nature of 'extraordinary circumstances'" "makes it impossible to anticipate and define every situation that might" qualify. *Kugler v. Helfant*, 421 U.S. 117, 124 (1975). There is "no magic formula for defining an 'extraordinary case.'" *United States v. Honken*, 184 F.3d 961, 969 (8th Cir. 1999). Indeed, "Congress itself must have appreciated that the meaning of the statutory term was not self-evident, or it would not have given the [Commission] the power to" define it. *Batterton*, 432 U.S. at 428.

The "sheer volume of [judicial] disagreement" preceding the policy statement (*supra* at 10 & n.1) proves the point. *See United States v. Mitchell*, 38 F.4th 382, 386 n.24 (3d Cir. 2022) ("[T]he split among the courts of appeals informs our conclusion that § 403(b) involves a genuine ambiguity."); *Smiley v.*

*Citibank (S.D.), N.A.*, 517 U.S. 735, 739 (1996) (citing judicial split as evidence of ambiguity); *Medtronic, Inc. v. Lohr*, 518 U.S. 470, 495-96 (1996) (similar).[10]

And that disagreement has been "intra-circuit as well as inter-circuit." *United States v. Keller*, 666 F.3d 103, 109 & n.7 (3d Cir. 2011) (intra-Circuit disagreement evidenced ambiguity); *Mitchell*, 38 F.4th at 386 n.24 (same). The Sixth Circuit generated dueling panel opinions that required an (8-7) en-banc decision to resolve. *See McCall*, 56 F.4th at 1050-51; *id.* at 1066 (Moore, J., dissenting); *id.* at 1074 (Gibbons, J., dissenting). The D.C. Circuit and Tenth Circuit also produced dueling views. *See Jenkins*, 50 F.4th at 1208 (Ginsburg, J., concurring in part, dissenting in part); *compare McGee*, 992 F.3d at 1037, *with United States v. Maumau*, 993 F.3d 821, 838 (10th Cir. 2021) (Tymkovich, J., concurring). The "serious arguments to be considered on both sides" of the split, *United States v. Williams*, 65 F.4th 343, 348-49 (7th Cir. 2023), show that the issue is "subject to different interpretations," *Keller*, 666 F.3d at 109.

They also illustrate why Congress gave the Commission binding authority to articulate uniform standards in the first place. It is a "fact that different judges (and others) can differ as to how best to reconcile the disparate ends of punishment." *Rita v. United States*, 551 U.S. 338, 349 (2007). What counts as

---

[10] This Court often looks to judicial disagreement as evidence of ambiguity. *See*, *e.g.*, *United States v. Perez*, 5 F.4th 390, 396 (3d Cir. 2021); *Keller*, 666 F.3d at 109 & n.7; *United States v. Diaz*, 592 F.3d 467, 473 (3d Cir. 2010).

"compelling," for example, is a value-laden question on which judges can and have disagreed. The Commission "fills [the] important institutional role" of resolving those policy questions, and "has the capacity courts lack to 'base its determinations on empirical data and national experience, guided by a professional staff with appropriate expertise.'" *Kimbrough*, 552 U.S. at 108-09. That is precisely why this Court has long deferred to the Commission even in the face of contrary panel precedent. *See Joshua*, 976 F.2d at 854 ("[T]his court is not bound to close its eyes to the new source of enlightenment," which "secur[es] the expertise of the [Commission]" and "promote[s] uniformity in the application of the [law].").

## B. The Policy Statement Comports With The Sentencing Reform Act

The Commission concluded that changes in law *alone* are not extraordinary. But it provided that courts may consider those changes when: (1) a prisoner has served more than 10 years, (2) of an "unusually long sentence," (3) now faces a "gross disparity" between the sentence imposed and that likely to be imposed today, and (4) the court has first given "full consideration of the defendant's individualized circumstances." § 1B1.13(b)(6). That approach is consistent with the text, context, and history of the Sentencing Reform Act.

### 1. Text

Starting with the text, the words "extraordinary and compelling" are capacious, and the policy statement fits within their contours.

**i.** Congress enacted the compassionate release statute, 18 U.S.C. § 3582(c)(1)(A)(i), as part of the 1984 Sentencing Reform Act. It has not changed the meaning of the words "extraordinary and compelling" since enacting them. We thus look to the meaning of the words at the time Congress enacted the Sentencing Reform Act. *Wis. Cent. Ltd. v. United States*, 138 S. Ct. 2067, 2074 (2018).

"Extraordinary" meant "[o]ut of the ordinary; exceeding the usual, average, or normal measure or degree." *Extraordinary*, Black's Law Dictionary 527 (5th ed. 1979). And the term "[e]xtraordinary circumstances" could encompass "[e]xtenuating circumstances," *Extraordinary Circumstances*, *id.*, which in turn described circumstances that "render a . . . crime less . . . reprehensible than it would otherwise be," or that call for "reduce[d] . . . punishment." *Extenuating Circumstances*, *id.* at 524. "Compelling" meant "calling for examination, scrutiny, consideration, or thought." *Compelling*, Webster's Third New Int'l Dictionary 463 (1981). So, together, "extraordinary and compelling" referred to circumstances that are beyond the ordinary and demand close attention—including those that tend to call for reduced punishment.

The words Congress chose also were understood to be "comprehensive and flexible in meaning," *Extraordinary*, Black's Law Dictionary 527 (5th ed. 1979), and capable of encompassing a "combination of circumstances," *Extraordinary*, Webster's Third New Int'l Dictionary 807 (1981). They also invite a holistic judgment that turns on the particulars of each case. *See Compelling Need*, Black's Law Dictionary 353 (11th ed. 2019) ("Generally, courts decide whether a compelling need is present based on the unique facts of each case."); *Brooker*, 976 F.3d at 237 (phrase provides "broad" and "very wide latitude").

The policy statement fits comfortably within those "comprehensive and flexible" words. Only a sliver of the inmate population will ever qualify under the policy statement. As the Commission explained, fewer than 12% of all inmates will meet the 10-year requirement. 88 Fed. Reg. at 28259. Far fewer are serving an "unusually long sentence" that is "gross[ly]" disproportionate to the sentence they would receive under current law. U.S.S.G. § 1B1.13(b)(6). For instance, the Commission estimates that merely 2,412 people—1.5% of the total inmate population—are serving stacked § 924(c) sentences like Mr. Rutherford.[11] And

---

[11] The total inmate population, as of this writing, is 156,854. Fed. Bureau of Prisons, *Statistics* (Jan. 25, 2024), https://www.bop.gov/about/statistics/ population_statistics.jsp, https://perma.cc/2HR6-YM26. As of 2021, 2,412 inmates (1.5% of 156,854) were serving stacked sentences. U.S. Sent'g Comm'n., *Estimate of the Impact of Selected Sections of S. 1014, The First Step Act Implementation Act of 2021*, at 1 (Oct. 2021), https://perma.cc/8VC8-25A7. As of

even these inmates do not automatically qualify. Instead, courts decide whether all of their individualized circumstances together are "extraordinary." Those who clear each of these hurdles will, by definition, face disparities that an "ordinary" or "average" inmate never will. *See Ordinary*, Black's Law Dictionary 989 (5th ed. 1979) (defining "[o]rdinary" as "belonging to . . . or characteristic of, the normal or average individual"). And the Commission's case-specific approach tracks the case-specific nature of the words "extraordinary" and "compelling."

      **ii.**    The government has only one textual argument: that the "ordinary practice" in federal sentencing is to apply new penalties prospectively, and that what is "ordinary" cannot be "extraordinary." *See Carter* Opp. Br. at 11. The problem with that argument is that it isolates a single factor (law changes) in a multi-factor analysis. And in doing so, it commits the fallacy of composition—that is, it assumes that what is true of a single part must be true of the whole. *Rosen v. Unilever U.S., Inc.*, 2010 WL 4807100, at *5-6 (N.D. Cal. May 3, 2010).[12]

---

2021, there were 3,742 inmates who received sentences that today would be reduced by § 401—the other First Step Act provision that applied only prospectively. *Id.* That is 2% of today's inmate population of 156,854.

    [12] The "'fallacy of composition consists of reasoning improperly'" "that something is true of a whole which can safely be said of its parts taken separately.'" Ruggero J. Aldisert, *Logic for Lawyers: A Guide to Clear Legal Thinking* 221 (3d ed. 1997) (citation omitted)). The fallacy, for example, would posit that a tire is made of rubber, and therefore the vehicle of which it is a part is also made of rubber. Applied here, the fallacy is that changes in law are ordinary, and therefore any group of circumstances involving a change in law is ordinary.

The words "extraordinary" and "compelling" contemplate that a *group of circumstances* can, together, take a case out of the ordinary—even if individual factors are ordinary.  For example, it is ordinary to get old.  And it is ordinary to get sick.  But age or health can combine with other factors (like serving a lawful sentence) to create an extraordinary and compelling circumstance.  That is because the words "extraordinary" and "compelling" invite a context-dependent analysis that asks whether a "combination of circumstances," together, "take a case out of the ordinary."  *United States v. Dominguez*, 296 F.3d 192, 196 (3d Cir. 2002).

In context-specific inquiries like this one, it is a "persistent error in legal analysis to ask whether a" single circumstance "'by itself' passes some threshold—to put evidence in compartments and ask whether each compartment suffices."  *United States v. Vaughn*, 62 F.4th 1071, 1072 (7th Cir. 2023).  That is because "the whole is often greater than the sum of its parts—especially when the parts are viewed in isolation."  *District of Columbia v. Wesby*, 583 U.S. 48, 60-61 (2018).  Thus, the Supreme Court in *Wesby* reversed an appellate court in a probable-cause case for "view[ing] each fact" "in isolation," finding each insufficient on its own in a "divide-and-conquer analysis."  *Id.  Wesby*, the Seventh Circuit has explained, provides a "sharp" "remind[er]" to "all judges that evidence should *not* be compartmentalized."  *Vaughn*, 62 F.4th at 1072.

This Court has affirmed the same principle. *See*, *e.g.*, *Johnson v. Folino*, 705 F.3d 117, 131 (3d Cir. 2013) ("[T]he sum of the parts almost invariably will be greater than any individual part.").[13] And it has—in the Rule 60(b)(6) context—applied that principle to changes in law specifically: twice reversing district courts for asking if a change in law was "extraordinary" in isolation, without examining "all the particulars of a movant's case." *Cox v. Horn*, 757 F.3d 113, 120-24 (3d Cir. 2014); *Satterfield v. Dist. Att'y of Phila.*, 872 F.3d 152, 155, 161-62 (3d Cir. 2017) ("Rather than impose any . . . bright-line rule that a particular change in law is never an extraordinary circumstance, we adhere to a 'case-dependent analysis'" that "examine[s] the full panoply of equitable circumstances" in a given case.).

Using similar reasoning, the Seventh Circuit recently held that "no matter how the [extraordinary-and-compelling] threshold is defined, a combination of factors may move any given prisoner past it, even if one factor alone does not." *Vaughn*, 62 F.4th at 1073. And it rejected an approach that asks if one factor in isolation is "extraordinary." *Id.* The Commission was reasonable to do the same.

_____

[13] *See also Halsey v. Pfeiffer*, 750 F.3d 273, 305 (3d Cir. 2014) (finding error in an analysis of an "interrogation process as a string of separated events" because "[o]ur precedent forecloses the adoption of . . . compartmentalized view[s]" "in which a court considers . . . material events independently or disjunctively"); *In re Baby Food Antitrust Litig.*, 166 F.3d 112, 124 (3d Cir. 1999) (evidence "should be analyzed as a whole and not be tightly compartmentalized"); *United States v. McGlory*, 968 F.2d 309, 334 (3d Cir. 1992) ("[I]ndividual pieces of evidence, insufficient in themselves to prove a point, may in cumulation prove it.").

## 2. Statutory Context

Context—in the form of 28 U.S.C. § 994(t)—further supports the Commission's conclusion. In § 994(t), Congress placed only one limit on the Commission's authority to describe "extraordinary and compelling reasons" for relief: "[r]ehabilitation of the defendant alone" is insufficient. 28 U.S.C. § 994(t). Section 994(t) shows that Congress knew how to speak clearly when it wanted to exclude topics from consideration. *See Chen*, 48 F.4th at 1099 (similar point).

Section 994(t) also underscores that courts can consider a *combination* of circumstances. Even when Congress expressly prohibited a consideration (rehabilitation), it chose not to do so categorically. Instead, it provided that "[r]ehabilitation . . . *alone*" cannot suffice. 28 U.S.C. § 994(t) (emphasis added). Unless the word "alone" has no meaning, that means that rehabilitation can be considered alongside other factors. *See*, *e.g.*, *Brooker*, 976 F.3d at 238 (stating the same). So even when Congress drew a line, it did not impose absolute prohibitions that applied to every situation.

The government's position extends much further. It seeks to fashion a stricter limit than Congress imposed when it spoke expressly. There is no basis for doing so. Congress was clear in its disdain for rehabilitation as a valid sentencing consideration, *see Tapia v. United States*, 564 U.S. 319, 324-27 (2011)—far clearer than it was about changes in law. Yet Congress still allowed courts to consider

rehabilitation alongside other factors.  It would be odd to conclude that Congress

nonetheless intended to categorically exclude changes in law but not rehabilitation.

The Commission's approach, by contrast, lines up with § 994(t).  Just as

rehabilitation alone does not suffice, the policy statement provides that changes in

law alone do not suffice.  Like Congress's approach in § 994(t), the policy

statement allows courts to consider law changes only when combined with other

factors.  And that is consistent with the meaning of "extraordinary and

compelling," a phrase that (like § 994(t)) invites a combination-focused analysis.

### 3.     History and Purpose

The Commission's determination also "fits seamlessly with the history and

purpose of the compassionate-release statute."  *Ruvalcaba*, 26 F.4th at 26.

**i.**     Congress enacted § 3582(c)(1)(A) to serve as a "safety valve" when

"the defendant's circumstances are so changed . . . that it would be inequitable to

continue the confinement."  S. Rep. No. 98-225, at 121, *as reprinted in* 1983

U.S.C.C.A.N. at 3304.  Congress contemplated that those "changed circumstances"

would include "cases in which . . . extraordinary and compelling circumstances

justify a reduction of an unusually long sentence."  *Id.* at 55, *as reprinted in* 1983

U.S.C.C.A.N. at 3238.

The government expressed the same view during Committee hearings.

Testifying in support of the Sentencing Reform Act, Judge John M. Walker, Jr.

(then serving in the Reagan administration) praised the proposed compassionate release provision for guarding against "unjustifiably long sentences." *Hearing on S. 829 Before the S. Subcomm. on Crim. L. of the S. Comm. on the Judiciary*, 98th Cong. 95 (1983) (statement of John M. Walker, Jr., Treasury Dep't). Chief among those protections was a provision allowing a court to "reduce any term of imprisonment," including "an unusually long one," if "it finds that there are extraordinary and compelling reasons to do so," including "a change in the circumstances that originally justified imposition of a particular sentence." *Id.*

The Commission keyed its policy statement to this legislative history. As it explained, the policy statement "permits the consideration of [nonretroactive] changes only in cases involving 'unusually long sentences,' which the legislative history to the SRA expressly identified as a context in which sentence reduction authority is needed." 88 Fed. Reg. at 28258. That view accords with the "many courts" that had read the legislative history similarly. *McCoy*, 981 F.3d at 286 n.8.

It also tracks caselaw—before and after the Sentencing Reform Act— recognizing that unforeseeable developments creating sentence disparities can justify compassionate release. For example, under a precursor compassionate release statute, 18 U.S.C. § 4205(g), one prisoner obtained compassionate release because post-sentence developments caused him to serve a "significantly longer sentence" than his codefendants. *United States v. Diaco*, 457 F. Supp. 371, 376

(D.N.J. 1978). Justice Scalia made a similar point decades later. *Setser v. United States*, 566 U.S. 231, 242-43 (2012) (noting that if a "district court's failure to anticipate developments that take place after the first sentencing" produces an "unfair[]" sentence, § 3582(c)(1)(A) "provides a mechanism for relief").[14]

The Commission's approach finds support in that caselaw. And it finds further support in this Court's precedents, which have "emphatically reject[ed] the notion that a particular change in law [can] never [be] an extraordinary circumstance" when viewed in context with other factors. *Satterfield*, 872 F.3d at 161 n.9. The Commission embraced the same "case-dependent analysis" this Court has endorsed in the Rule 60(b)(6) context, placing a change in law next to "the full panoply of" a defendant's "circumstances" before deciding if those circumstances are extraordinary. *Id.* at 162.

_____

[14] In addition, even in the *stricter* context of a Rule 60(b) motion raising an untimely habeas issue, the Supreme Court—both before and after 1984—has acknowledged that changes in the law can constitute "extraordinary circumstances." *See Polites v. United States*, 364 U.S. 426, 433 (1960) (acknowledging that post-judgment "change[s] in governing law" may constitute "extraordinary circumstances" in Rule 60(b)(6) context); *Buck v. Davis*, 580 U.S. 100, 126 (2017) (finding that post-judgment change in law constituted an "extraordinary circumstance" under Rule 60(b)(6)); *see also Kemp v. United States*, 596 U.S. 528, 540 (2022) (Sotomayor, J., concurring) (noting that "settled precedents"—including *Polites* and *Buck*—establish that a "change in controlling law" can constitute an "extraordinary circumstance[]" in Rule 60(b)(6) context). This Court has said the same. *Cox*, 757 F.3d at 124; *Satterfield*, 872 F.3d at 162.

**ii.**    Two additional structural considerations support the policy statement. First, it solves the problem that Congress created the Commission to solve: lack of uniform standards guiding courts in the sentence-modification process.  In 1984, Congress aimed to take questions of sentencing policy—at least, those relating to uniform national standards—out of the hands of individual judges and place them in the hands of the Commission.  *See*, *e.g.*, *Pepper v. United States*, 562 U.S. 476, 513 (2011) (Breyer, J., concurring) ("[T]he Commission has comparatively greater ability to gather information, to consider a broader national picture, . . . and ultimately to write more coherent overall standards that reflect nationally uniform . . . sentencing policies.").  Invalidating the Commission's reading—when Congress explicitly gave it the power to define "extraordinary and compelling"— would be a radical rejection of Congress's decision to grant the Commission the power to provide binding, "nationally uniform" standards in this context.  *Id.*

Second, it is a "longstanding tradition in American law" that courts in sentence-modification proceedings may "consider the 'fullest information possible,'" *Concepcion*, 597 U.S. at 486, 493, including "nonretroactive intervening changes of law," *id.* at 493.  "That discretion . . . is bounded only when Congress or the Constitution expressly limits the type of information a district court may consider in modifying a sentence."  *Id.* at 491.  Congress passed the Sentencing Reform Act against the backdrop of that "venerable tradition" of

discretion.  Yet aside from prohibiting "[r]ehabilitation . . . alone," 28 U.S.C. §

994(t), Congress provided no express limit on the phrase "extraordinary and

compelling"—a phrase understood at the time to be "comprehensive and flexible."

*Supra* at 35.  The Commission's approach—permitting district courts to consider

law changes in a context-specific and case-dependent manner—is consistent with

the historical discretion acknowledged in *Concepcion*.  *See* 597 U.S. at 491-93.

### C.    The First Step Act Does Not Foreclose The Policy Statement

The government has also argued that the policy statement "conflicts" with

provisions in the First Step Act of 2018 providing that certain reduced gun and

drug penalties do not apply retroactively.  *See*, *e.g.*, *Carter* Opp. Br. at 6 n.3, 15.

That argument fails because nothing in the First Step Act mentions—let alone

expressly limits—what may suffice to support a compassionate release motion.

**1.**    The First Step Act has two relevant nonretroactivity provisions—in

§§ 401(c) and 403(b).  Section 401(a) reduces certain drug-related mandatory

minimums, while § 403(a) eliminates the practice of "stacking" § 924(c) charges.

132 Stat at 5221-22.  Sections 401(c) and 403(b) apply these changes "to any

offense that was committed before the date of enactment of this Act, if a sentence

for the offense has not been imposed as of such date of the enactment."  132 Stat.

at 5221-22.  Neither provision mentions compassionate release—let alone imposes

any explicit limitations on the Commission's ability to define what qualifies.

**2.** There is no "implicit directive" in that "congressional silence," *Kimbrough*, 552 U.S. at 103; *see also Jama v. Immigration & Customs Enf't*, 543 U.S. 335, 341 (2005) ("We do not lightly assume that Congress has omitted from its adopted text requirements that it nonetheless intends to apply."). Indeed, the Supreme Court has repeatedly rejected efforts to limit sentencing or resentencing statutes based on silent implications from Congress—as the government seeks to do here. Three cases (*Rodriguez*, *Dean*, and *Concepcion*) illustrate this point.

In *Rodriguez v. United States*, 480 U.S. 522 (1987), the government argued that a new statute mandating a two-year sentence for felonies committed while on bail "superseded" the Probation Act, which had "long" authorized courts to suspend sentences. *Id.* at 522-23. The trial court used its power in the Probation Act to suspend the sentence, *id.* at 523; the court of appeals found that the newer law impliedly limited that power, because otherwise the new law's purpose would be thwarted, *id.* at 525. The Supreme Court rejected that view because "[n]othing in the language of" the new statute "explicitly divest[ed]" courts of their authority to suspend sentences. *Id.* at 524. The Court found it "most impermissibl[e]" to rely on the new law's supposed "broad purposes" to silently limit the Probation Act, for "no legislation pursues its purposes at all costs." *Id.* at 525-26.

The Court unanimously rejected a similar argument in *Dean v. United States*, 581 U.S. 62, 68-71 (2017). The question there was whether (as the

government argued) § 924(c)'s mandatory minimums prohibited courts from exercising their general discretion (under § 3553(a)) to consider the aggregate length of a defendant's sentence when fashioning sentences for non-§ 924(c) counts in a multi-count indictment. *Id.* at 64, 68. The Court said no, because § 924(c) "says nothing about" the length of other sentences, "much less about what information a court may consider" when determining those sentences, *id.* at 69. The Court refused to "read" such a "limitation into § 924(c)" where "Congress ha[d] shown that it knows how to direct sentencing practices in express terms"— by enacting a different statute that "*actually* say[s]" "what the Government reads § 924(c) to say." *Id.* at 70 (emphasis in *Dean*).

The Court applied a similar principle in *Concepcion*, rejecting the government's argument that § 404 of the First Step Act limited a court's broad discretion to consider any information (including nonretroactive changes in law) during a sentence modification proceeding. 597 U.S. at 494-98. That "discretion is bounded only when Congress or the Constitution expressly limits" it, the Court noted, and "Congress is not shy about placing such limits," *id.* at 491, 494-95 (collecting examples of "express" limits). But "[n]othing in . . . the First Step Act" placed such a limit, because nothing in its terms "prohibit[s] district courts from considering any arguments in favor of, or against, sentence modification." *Id.* at

495. "Had Congress intended to constrain district courts" during sentence modification, it "would have written" that limit into § 404. *Id*. at 497.

So too here. Congress knows how to restrict the meaning of "extraordinary and compelling." It did so in § 994(t). But the First Step Act "says nothing about" what justifies a sentence reduction under the compassionate release statute, "much less about what information a court may consider" in a compassionate release analysis. *Dean*, 581 U.S. at 69. Thus, to infer from the First Step Act "that district courts cannot consider nonretroactive changes in sentencing law would be to create a categorical bar against a particular factor, which Congress itself has not done." *Chen*, 48 F.4th at 1098.

**3.** The government has also argued that the policy statement conflicts with the supposed intent of the 2018 Congress. *See Carter* Opp. Br. at 16 n.8 ("It cannot be that" the 2018 Congress "meant to allow the compassionate release statute to preempt its" retroactivity "directive[s].").

Any argument based on the purported intent of the 2018 Congress is misplaced. What matters here is the text of § 3582(c)(1)(A)(i). The 2018 Congress passed the First Step Act "without any alterations to the phrase 'extraordinary and compelling reasons,'" which means that the phrase "retained the meaning it had" "under the [1984] version of the statute." *Andrews*, 12 F.4th at 260. Courts ascertain a statute's meaning by asking what the words passed by the

legislature meant at the time a law was passed. *See Wis. Cent.*, 138 S. Ct. at 2074. The supposed intent of a legislative body sitting decades later is irrelevant to that question. *Cf. Iverson v. United States*, 973 F.3d 843, 850 (8th Cir. 2020) (rejecting "that Congress silently altered a term's meaning in one statute by passing an unrelated statute almost 30 years later").

4.     Finally, the government has argued that the policy statement is improper because it "override[s]" the nonretroactivity "directive" in §§ 401(c) and 403(b). *See Carter* Opp. Br. at 15-16. The government's position appears to be that the policy statement grants the same remedy—retroactive application of a sentencing law—that the First Step Act withheld. *Id.* The first problem with that argument is that it mistakenly assumes that the policy statement treats a change in law alone as sufficient to justify compassionate release. As the First Circuit explained in a pre-policy-statement decision, this sort of "critique knocks down a straw man." *Ruvalcaba*, 26 F.4th at 27. The policy statement does not "suggest that the FSA's non-retroactive amendments 'simultaneously creat[ed] an extraordinary and compelling reason for early release.'" *Id.* (cleaned up).

The second problem with the argument is that it falsely equates the policy statement with a retroactive change in law. A retroactive change in law makes every defendant who commits a covered offense automatically eligible to seek resentencing. *See, e.g.*, *United States v. Jackson*, 964 F.3d 197, 205 (3d Cir. 2020).

The eligibility analysis under the policy statement, by contrast, applies on a discretionary case-by-case basis. It is far from automatic. Even when a defendant has (1) served over ten years, (2) established he is serving an "unusually long" sentence, and (3) shown that he is facing a "gross disparity," the district court still has discretion to reject eligibility if it finds that the defendant's individualized circumstances are not extraordinary. U.S.S.G. § 1B1.13(b)(6). That sort of case-specific eligibility analysis would be reversible error under a retroactive statute. *See Jackson*, 964 F.3d at 205 (reversing district court under § 404(a)—a retroactive provision of the First Step Act—for making a case-specific findings at eligibility stage instead of looking only to defendant's statute of conviction).

***

In sum: the government's First Step Act argument depends on several untenable assumptions—all drawn from congressional silence. The first is that §§ 403(b) and 401(c) of the First Step Act contained words they do not have— imposing a silent limit on what courts adjudicating compassionate release motions may consider. The second is that this purported limit not only bars consideration of changes in law alone, but also prevents them from *ever* being considered in *any* combination of circumstances—even though Congress itself has never gone so far even when it *did* limit a consideration (rehabilitation) in 28 U.S.C. § 994(t). And

finally: that Congress created this silent rule for *all law changes*, even though its enacted text merely withholds retroactive application of two specific penalties.

If Congress wants to limit the Commission's discretion, it may do so. But it has not done so through the First Step Act. And it is not a court's job to "elaborate unprovided-for exceptions to a text" or "supply words . . . that have been omitted." Antonin Scalia & Bryan A. Garner, *Reading Law* 93 (1st ed. 2012).

## IV. The Court Should Remand For Further Proceedings

Mr. Rutherford deserves an opportunity to show the district court that he qualifies for compassionate release under the new policy statement. He has served more than 18 years of a 42.5-year sentence that Judges Ambro and McKee have already described as "unthinkabl[y]" long based on his case's underlying facts. And there is a substantial disparity between the sentence he received and the one he would likely receive today: his mandatory-minimum sentence today would be 14 years instead of 32.

And Mr. Rutherford—now counseled—deserves an opportunity to present a clear record of his individualized circumstances: an effort he has already admirably engaged in while unrepresented. Mr. Rutherford's impressive efforts to better himself, close-to-spotless disciplinary record over the last decade, faith and personal development, age while committing his crime, and family circumstances

are all compelling individualized reasons that, combined with the disparity Mr. Rutherford faces, would justify a sentence reduction.

But a remand to develop those circumstances is close to useless without this Court first clarifying whether *Andrews* continues to govern. That is a threshold legal question that all sides of this litigation will benefit from answering. This Court should answer it, hold that the policy statement now controls, and remand for further proceedings under the policy statement.

## CONCLUSION

The Court should vacate the district court's order denying Mr. Rutherford's compassionate release motion and remand for further proceedings.

Dated:  January 31, 2024

Respectfully submitted,

*/s/ Justin B. Berg*

Justin B. Berg
Alex P. Treiger
Geoffrey J.H. Block
KELLOGG, HANSEN, TODD,
    FIGEL & FREDERICK, P.L.L.C.
1615 M Street, N.W., Suite 400
Washington, D.C. 20036
(202) 326-7900
jberg@kellogghansen.com
atreiger@kellogghansen.com
gblock@kellogghansen.com

*Counsel for Defendant-Appellant*

# CERTIFICATE OF COMPLIANCE

1.     This document complies with the type-volume limit of Federal Rule of Appellate Procedure 32(a)(7) because, excluding the parts of the document exempted by Federal Rule of Appellate Procedure 32(f), this document contains 11,674 words.

2.     This document complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word 2016 in 14-point Times New Roman font.  As permitted by Federal Rule of Appellate Procedure 32(g), the undersigned has relied on the word count feature of this word processing system in preparing this certificate.

3.     In addition, pursuant to 3rd Circuit L.A.R. 31.1(c), the undersigned hereby certifies that the text of the electronic brief filed with the Court is identical to the paper copies, that a virus detection program (CrowdStrike) has been run on the electronic file, and that no virus was detected.


Dated:  January 31, 2024                 */s/ Justin B. Berg*
                                           Justin B. Berg

## CERTIFICATE OF FILING AND SERVICE

The undersigned hereby certifies that, on January 31, 2024, I caused an electronic copy of the foregoing to be electronically filed with the United States Court of Appeals for the Third Circuit using the CM/ECF system, which will automatically send notification of such filing to counsel of record.

Dated:  January 31, 2024

/s/ Justin B. Berg

Justin B. Berg

## <u>CERTIFICATE OF BAR MEMBERSHIP</u>

Pursuant to 3rd Circuit L.A.R. 28.3(d) and 46.1, I, Justin B. Berg, hereby certify that I am a member in good standing of the bar of the United States Court of Appeals for the Third Circuit.

Dated:  July 31, 2024

*/s/ Justin B. Berg*
Justin B. Berg

# United States Court of Appeals for the Third Circuit

UNITED STATES

v.

DANIEL RUTHERFORD

On Appeal from the United States
District Court for the Eastern District of Pennsylvania (Philadelphia),
No. 2:05-cr-00126-JMY-1, Hon. John M. Younge

**JOINT APPENDIX
VOLUME 1 of 2 (pp. 1-14)**

Salvatore L. Astolfi
Assistant United States Attorney

Robert A. Zauzmer
Assistant United States Attorney
Chief of Appeals

OFFICE OF THE U.S. ATTORNEY
Eastern District of Pennsylvania
615 Chestnut Street, Suite 1250
Philadelphia, PA 19106
(215) 861-8431
salvatore.astolfi@usdoj.gov
bob.zauzmer@usdoj.gov

*Counsel for Appellee*

January 31, 2024

Justin B. Berg
Alex P. Treiger
Geoffrey J.H. Block
KELLOGG, HANSEN, TODD,
    FIGEL & FREDERICK, P.L.L.C.
1615 M Street, N.W., Suite 400
Washington, D.C. 20036
(202) 326-7900
jberg@kellogghansen.com
atreiger@kellogghansen.com
gblock@kellogghansen.com

*Counsel for Appellant*

# TABLE OF CONTENTS

| Date of Docket Entry | Dist. Ct. ECF Number | Document | Page |
|---|---|---|---|
| **JOINT APPENDIX VOLUME 1 of 2** | | | |
| 04/27/23 | 165 | Memorandum Opinion, dated April 26, 2023 | JA1 |
| 04/27/23 | 166 | Order Denying Daniel Rutherford's Motion for Compassionate Release, dated April 26, 2023 | JA4 |
| 05/10/23 | 167 | Notice of Appeal, dated May 9, 2023 | JA12 |
| **JOINT APPENDIX VOLUME 2 of 2** | | | |
| | N/A | Docket Sheet for *United States v. Rutherford*, No. 2:05-cr-00126-JMY (E.D. Pa.) | JA15 |
| 03/08/05 | 1 | Indictment | JA33 |
| 08/24/20 | 151 | (Pro Se) Letter from Daniel Rutherford dated 8/11/2020 Re: Motion for Compassionate Release | JA40 |
| 02/17/21 | 152 | (Pro Se) Motion for Compassionate Release and Appointment of Counsel by Daniel Rutherford | JA47 |
| 04/26/21 | 153 | Pro Se Motion for Sentence Reduction Under the Compassionate Release Statute by Daniel Rutherford | JA57 |
| 04/30/21 | 154 | Letter on Behalf of Daniel Rutherford by Samara Rutherford | JA90 |
| 05/11/21 | 155 | Pro Se Motion to Expand the Record by Daniel Rutherford | JA93 |
| 06/05/21 | 156 | Government's Response to 153 Daniel Rutherford's Motion To Reduce Sentence | JA129 |
| 09/29/21 | 157 | Government's Supplemental Response in Opposition to Daniel Rutherford's Motion To Reduce Sentence | JA145 |

| Date of Docket Entry | Dist. Ct. ECF Number | Document | Page |
|---|---|---|---|
| 04/17/23 | 162 | (Pro Se) Letter by Daniel Rutherford dated 4/10/2023 | JA158 |
| 01/08/24 | N/A | Oral Arg. Tr., *United States v. Carter*, No. 2:07-cr-00374-WB (E.D. Pa. Jan. 8, 2024) | JA161 |

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | CRIMINAL ACTION |
| vs. | : | |
| | : | No. 05-cr-0126-JMY-1 |
| DANIEL RUTHERFORD, et al | : | |

### MEMORANDUM

**Younge, J.**                                                                April 26, 2023

Currently before the Court are Defendant's *Pro Se Motions for Compassionate Release and Appointment of Counsel* [1] (ECF No. 152), *Pro Se Motion for Sentence Reduction under the Compassionate Release Statute 18:3582 (c)(1)(A)(i), as Amended by the First Step Act* (ECF No. 153), and *Pro Se Daniel Rutherford Motion to Expand the Record* (ECF No. 155).  The United States of America (the "Government") opposes the Motions ("Opp.," ECF No. 156; *Government's Supplemental Response to Defendant's Motion to Reduce Sentence Pursuant to 18 U.S.C. § 3582(c)(1)(A)(i)* filed at (ECF No. 157).

For the reasons set forth below, the Court will deny Defendant's request for compassionate release.

### I.      PROCEDURAL AND FACTUAL BACKGROUND:

Defendant was twenty-two years old when he was convicted by a jury of committing two separate gun point robberies at DePativo Chiropractic Center's office located at 61st and Spruce

---

[1] Federal Defenders represent Defendant in a *Motion to Vacate/Set Aside/Correct Sentence (2255) under 28 U.S.C. § 2255*.  (ECF No. 141.)  However, they do not represent Defendant in his request for compassionate relief.  Since the Court finds Defendant's request for compassionate relief to have no merit, it will decline to appoint counsel to litigate the issue of compassionate relief.  There is no right to counsel with respect to a motion for compassionate release.  *United States v. Munford*, 2021 WL 111863, at *6 (E.D. Pa. Jan. 12, 2021) (Pratter, J.) (appointment of counsel denied where the defendant has competently presented his claim, and the legal issues are relatively straightforward); *United States v. Ryerson*, 2020 WL 3259530, at *2 (E.D. Tenn. June 16, 2020) (citing cases).

streets in Philadelphia on July 7, 2003, and again on July 11, 2003. Defendant had a prior criminal record and was on escape status after failing to return from work release on May 27, 2003 at the time he committed these two robberies.

Defendant was indicted on charges of conspiracy to interfere with interstate commerce by robbery (Hobbs Act robbery) in violation of 18 U.S.C. § 1951(a) (Count 1); interference with interstate commerce by robbery in violation of 18 U.S.C. § 1951(a) (Count 2); using and carrying a firearm during a crime of violence in violation of 18 U.S.C. § 924(c)(1) (Count 3); and aiding and abetting in violation of 18 U.S.C. § 2 (Counts 4 and 5). He proceeded to trial, and on September 16, 2005, the jury returned a verdict of guilty on all counts. (Memorandum and Order, Judge Legrome D. Davis, 4/30/14, ECF No. 130.)

At sentencing on January 30, 2006, Defendant faced a sentencing guideline range for the robberies of 100-125 months, plus mandatory minimum consecutive terms of 7 years for the first 924(c) offense, and 25 years for the second. (*Government's Sentencing Memorandum* page 2, ECF No. 66; *Defendant's Sentencing Memorandum* page 10, ECF No. 67.) Although the Guidelines were advisory, Judge Davis elected to impose a sentence at the very maximum of the guideline recommendation, imposing a term of 125 months plus 32 years to run consecutively, for a total term of 509 months' imprisonment (42 years and 5 months). (Judgment of Sentence, ECF No. 72.) Defendant's Judgment of Sentence was affirmed on appeal. *United States v. Rutherford*, No. 06-1437, 236 F. App'x. 835 (3d Cir. June 26, 2007). Defendant's post-conviction challenges have also been unsuccessful.

Thereafter, in Section 403 of the First Step Act – effective December 21, 2018 – Congress amended Section 924(c) to provide that the 25-year consecutive term for a successive

924(c) offense did not apply unless the defendant had a previous, final conviction for 924(c) charge at the time of the offense.

Under current law, Defendant would face a seven-year sentence on each Section 924(c) charge (as a firearm was brandished on each occasion). The statutory requirement still applies that each such sentence must run consecutively to each other and to any other sentence imposed. That means the mandatory minimum sentence on the two 924(c) counts, if charged today in the same initial 924(c) prosecution, would be 14 years. (*Pro Se Motion for Sentence Reduction Under the Compassionate Release Statute, 18 U.S.C. § 3582(c)(1)(A)(i), as Amended by the First Step Act* page 23.) Based on this phenomenon, Defendant seeks compassionate release under 18 U.S.C. § 3582(c)(1)(A)(i), which permits a court to reduce a sentence upon a showing of "extraordinary and compelling reasons." (*Id.*) Defendant avers that he is now forty-one years old, and he argues that he is serving a sentence of over 42 years that would not be imposed on a comparable current offender. (*Id.* page 1-2; Letter April 17, 2023, ECF No. 162.) He points to the fact that his sentence was based on the earlier version of 18 U.S.C. § 924(c), which required a mandatory consecutive 25-year term for each successive Section 924(c) conviction after the first, even when all offenses were prosecuted in the same case (a practice known as "stacking"). (page 22 (citing *Deal v. United States*, 508 U.S. 129 (1993).) He was therefore sentenced to a seven-year mandatory term on the first of his Section 924(c) offenses, and a stacked consecutive term of 25 years on the second such count. (*Id.*)

This matter was previously assigned to the Honorable Darnell Jones, and after a review of the docket it would appear that Judge Darnell Jones abstained from ruling on Defendant's request for compassionate relief pending the Third Circuit Court of Appeals' review of the

3

**JA3**

decision reached by Judge Eduardo C. Robreno in *United States v. Andrews*, 480 F. Supp. 3d 669 (E.D. Pa. Aug 19, 2020).

## II.   LEGAL STANDARD:

On December 21, 2018, Congress enacted Section 603(b) of the First Step Act which amended 18 U.S.C. § 3582(c)(1)(A) to allow prisoners to directly petition courts for compassionate release.  (§ 603(b).)  Prior to the enactment of Section 603(b) of the First Step Act motions for compassionate relief under 18 U.S.C. § 3582 could only be brought by the Director of the Bureau of Prisons.  The First Step Act added the procedure for prisoner-initiated motions while leaving the rest of the compassionate-release framework unchanged.  Therefore, a district court may reduce its sentence through compassionate release if it determines: (1) the incarcerated movant meets administrative exhaustion requirements; (2) "extraordinary and compelling reasons" warrant a reduction; (3) the reduction would be "consistent with any applicable policy statements issued by the Sentencing Commission," and (4) the applicable sentencing factors under 18 U.S.C. § 3553(a) warrant a reduction. 18 U.S.C. § 3582.  18 U.S.C. § 3582(c)(1)(A).

The district court's decision to grant compassionate release is a purely discretionary decision.  *United States v. Pawlowski*, 967 F.3d 327, 330 (3d Cir. 2020).  The Third Circuit Court of Appeals has reviewed the district court's decision to deny a compassionate-release motion for abuse of discretion.  *Id.*  Under this abuse-of-discretion standard, the Third Circuit has stated that it will not disturb a district court's determination unless it is left with "a definite and firm conviction that [it] committed a clear error of judgment in the conclusion it reached." *Id.* (quoting *Oddi v. Ford Motor Co.*, 234 F.3d 136, 146 (3d Cir. 2000)).

### III.   DISCUSSION:

Defendant Rutherford seeks compassionate release under 18 U.S.C. § 3582(c)(1)(A)(i), which permits a court to reduce a sentence upon a showing of "extraordinary and compelling reasons."  The Parties do not dispute that Defendant has exhausted administrative remedies under the Prison Litigation Reform Act, 42 U.S.C. § 1997(e); therefore, the Court will address Defendant's claim of extraordinary and compelling circumstances.  In his requests for compassionate relief, Defendant primarily argues that due to the amendment of 18 U.S.C. § 924(c), his sentence would be at least 18 years shorter if imposed today.  (*Pro se Motion for Sentence Reduction Under the Compassionate Release Statute, 18 U.S.C. § 3582( c)(1)(A)(i), as Amended by the First Step Act* page 22-23.)  He was sentenced on January 30, 2006, and if he were sentenced today under currently law, he believes his sentence would range between 14 to 15 years' imprisonment.  (*Id.*)

As will be discussed more fully herein below, Defendant also references COVID-19 pandemic and certain medical conditions that afflict him.  However, he does not assert the COVID-19 pandemic coupled with his personal medical condition as an independent basis for release; rather, he focuses on these issues when discussing the sentencing factors under 18 U.S.C. § 3553(a).  In this regard, it would appear that Defendant is attempting to satisfy the fourth element of the test for determining whether he is entitled to compassionate relief when he argues that the COVID-19 pandemic and his medical condition entitle him to release from confinement under 18 U.S.C. § 3582(c)(1)(A)(i).

The Court will address Defendant's arguments in turn.

**A.**    **Compassionate Release Under the Amended Version of 18 U.S.C. § 924(c) in Light of *United States v. Andrews*, 12 F.4th 255 (3d Cir. Aug 30, 2021):**

Based on the holding of *United States v. Andrews*, 12 F.4th 255 (3d Cir. Aug 30, 2021), the Court rejects Defendant's argument for compassionate relief under the amended version of 18 U.S.C. § 924(c).  In finding Defendant's argument to have no merit, the Court relies on *Andrews* as persuasive authority.  *Andrew*, 12 F.4th at 261 (holding that neither the length of a lawfully imposed sentence nor non-retroactive changes in §924(c) of the statutory sentencing law establish extraordinary and compelling circumstances for release.).

In *Andrews*, the defendant had been sentenced to a term of imprisonment of 312 years based on 13 armed robberies he committed at the age of 19, a sentence that would be far lower under current law based on the amended version of 18 U.S.C. § 924(c) – which Defendant cites to in this matter.  Third Circuit Court upheld the district court's finding that the situation did not present an "extraordinary and compelling reason" for compassionate release under 18 U.S.C. § 3582(c)(1)(A)(i), stating:

> The duration of a lawfully imposed sentence does not create an extraordinary or compelling circumstance. "[T]here is nothing 'extraordinary' about leaving untouched the exact penalties that Congress prescribed and that a district court imposed for particular violations of a statute." *United States v. Thacker*, 4 F.4th 569, 574 (7th Cir. 2021). "Indeed, the imposition of a sentence that was not only permissible but statutorily required at the time is neither an extraordinary nor a compelling reason to now reduce that same sentence." *United States v. Maumau*, 993 F.3d 821, 838 (10th Cir. 2021) (Tymkovich, C.J., concurring). Moreover, considering the length of a statutorily mandated sentence as a reason for modifying a sentence would infringe on Congress's authority to set penalties.

*Andrews*, 12 F.4th at 260-261.

6

**JA6**

The Court went on to write:

> The nonretroactive changes to the § 924(c) mandatory minimums also cannot be a basis for compassionate release. In passing the First Step Act, Congress specifically decided that the changes to the § 924(c) mandatory minimums would not apply to people who had already been sentenced. See First Step Act § 403(b). That is conventional: "[I]n federal sentencing the ordinary practice is to apply new penalties to defendants not yet sentenced, while withholding that change from defendants already sentenced." *Dorsey v. United States*, 567 U.S. 260, 280 (2012). "What the Supreme Court views as the 'ordinary practice' cannot also be an 'extraordinary and compelling reason' to deviate from that practice." *United States v. Wills*, 997 F.3d 685, 688 (6th Cir. 2021).

*Andrews*, 12 F.4th at 261.

Defendant seeks compassionate release from a sentence that was lawful when imposed based on changes in sentencing law that Congress expressly made non-retroactive. The Court finds that Congress expressly declined to extend benefits of the amended Section 942(c) to individuals like Defendant. Therefore, Defendant fails to come forward with extraordinary or compelling reasons for early release and his Motion will be denied.

**B.    Defendant's Health and the COVID-19 Pandemic:**

Defendant presents his health-related justification for release in relationship to the fourth step of the compassionate release analysis, as a sentencing factor under 18 U.S.C. § 3553(a). (*Pro Se Motion for Sentence Reduction under the Compassionate Release Statute 18:3582 (c)(1)(A)(i), as Amended by the First Step Act* page 25; ECF No. 153.) Therefore, the Court need not address Defendant's COVID-19 Pandemic health related argument because it has already determined that Defendant fails to establish extraordinary and compelling circumstances to justify release under the amended version of Section 924(c). However, to the extent that Defendant's request could be construed to seek health related compassionate release, the Court

finds no compelling or extraordinary health related circumstances presented in his various
Motions.

In his various filings, Defendant fails to establish that he is at an increased danger from
COVID-19; therefore, he fails to set forth an extraordinary or compelling reason for granting
compassionate release at this time.  Defendant avers that he is overweight and suffers from
hypertension or high blood pressure.  (*Pro Se Motion for Sentence Reduction under the*
*Compassionate Release Statute 18:3582 (c)(1)(A)(i), as Amended by the First Step Act* page 28,
ECF No. 153.)  Defendant also presented medical records to establish that he was prescribed
Lisinopril in 20 mg tablets and hydrochlorothiazide in 25 mg tablets/capsules to treat
hypertension/high blood pressure.  (*Motion for Compassionate Release and Appointment of*
*Counsel*, ECF No. 152; Bureau of Prison Medical Records, *Motion to Expand the Record* page
22-24, Exhibit 5, ECF No. 155.)

Defendant has not established that his high blood pressure and related medical conditions
constitute a serious medical condition to find extraordinary and compelling reasons.  Obesity and
hypertension may be a risk factor for severe COVID-19 disease; however, the Government
represented that Defendant received doses of the Pfizer vaccine on March 16 and April 6, 2021.
Furthermore, the Federal Bureau of Prisons has taken substantial steps to limit the spread of the
COVID-19 virus within its facilities among the inmate population.  Therefore, Defendant failed
to establish that he was in anymore apparent danger from the virus than if he were in the general
population.  *See, e.g.*, *United States v. Hannigan*, 2021 WL 1599707, at *5-6 (E.D. Pa. Apr. 22,
2021) (Kenney, J.) ("Other courts in the Third Circuit have agreed that the protection provided
by an authorized COVID-19 vaccination reduces the risk of serious illness from COVID-19 to
such a degree that the threat of the pandemic alone cannot present an extraordinary and

compelling reason for compassionate release."); *United States v. Kamara*, 2021 WL 2137589

(E.D. Pa. May 26, 2021) (Bartle, J.); *United States v. Peterson*, 2021 WL 2156398, at *2 (E.D.

Pa. May 27, 2021) (Joyner, J.) (the defendant "suffers from hypertension, asthma, and

prediabetes and he is obese and a former smoker," but "[g]iven the significant protection the

[Johnson and Johnson] vaccine offers and the declining rates of COVID-19 infections in prisons,

we (like many other courts) do not find that Mr. Peterson has presented extraordinary and

compelling circumstances at this time."); *United States v. Roper*, 2021 WL 963583, at *4 (E.D.

Pa. Mar. 15, 2021) (Kearney, J.) ("The risk posed to an inoculated Mr. Roper is not an

extraordinary and compelling reason for his release."); *United States v. Jones*, 2021 WL

1561959, at *1 (E.D. Pa. Apr. 21, 2021) (McHugh, J.) ("As the Government itself acknowledges,

the scientific consensus surrounding vaccines can change. . . . But as of now, the available data

confirms the extreme effectiveness of the vaccines."); *United States v. Willis*, No. 10-416, ECF

239 (E.D. Pa. May 3, 2021) (Padova, J.); *United States v. Newsuan*, 2021 WL 2856509, at *4

(E.D. Pa. July 7, 2021) (Pratter, J.) (68-year-old defendant who presents diabetes, obesity, and

hypertension does not present extraordinary circumstance in light of vaccination); *United States

v. Lopez-Batista*, No. 16-358, ECF No. 94 (E.D. Pa. Aug. 23, 2021) (Sanchez, C.J.) (diabetes and

obesity do not warrant release in light of vaccination); *United States v. Berry*, 2021 WL

3537145, at *3 (E.D. Pa. Aug. 11, 2021) (Savage, J.) ("Although he suffers from medical

conditions making him more vulnerable to serious illness or death from COVID-19, the risks

posed to Berry's health are minimal.  His vaccination status provides sufficient protection against

the risks. Moreover, Berry is housed at FCI Schuylkill, which has no reported cases among

inmates or staff."); *United States v. Otero-Montalvo*, 2021 WL 1945764, at *3 (E.D. Pa. May 14,

2021) (Schmehl, J.) (41-year-old defendant presents asthma and obesity, but has been

vaccinated; the court dismisses his complaints regarding prison management, stating, "The BOP and FCI Fort Dix administering vaccinations shows that they are taking the appropriate precautions to the COVID-19 pandemic and are safeguarding inmates."); *United States v. Glenn*, 2021 WL 3190553, at \*7 (E.D. Pa. July 28, 2021) (Slomsky, J.) (the defendant presents diabetes, but relief is denied as he has been vaccinated).

## IV.    CONCLUSION:

For these reasons, Defendant's request for compassionate release is denied.  Defendant is free to file a new petition for compassionate release if his health condition deteriorates.  An appropriate order will follow.

BY THE COURT:

    /s/ John Milton Younge
Judge John Milton Younge

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | CRIMINAL ACTION |
| vs. | : | |
| | : | No. 05-cr-0126-JMY-1 |
| DANIEL RUTHERFORD, et al | : | |

**ORDER**

AND NOW, this 26th day of April, 2023 upon consideration of Defendant's *Pro Se Motion for Compassionate Release and Appointment of Counsel* (ECF No. 152); *Pro Se Motion for Sentence Reduction under the Compassionate Release Statute 18:3582 (c)(1)(A)(i), as Amended by the First Step Act* (ECF No. 153); and *Pro Se Daniel Rutherford Motion to Expand the Record* (ECF No. 155), and all papers submitted in support thereof and in opposition thereto, it is hereby ORDERED that Defendant's Motions for compassionate release under 18 U.S.C. § 3582(c)(1)(A)(i) will be DENIED for the reasons set forth in the accompanying memorandum filed by the Court along with this Order.

It is further ORDERED that Defendant is free to file a new petition for compassionate release if his health condition deteriorates or has deteriorated.

BY THE COURT:

___/s/ John Milton Younge____
Judge John Milton Younge

**JA11**

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA
AT PHILADELPHIA

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | USDC Case No. 2:05-cr-126-1 |
| ) | |
| DANIEL RUTHERFORD, ) | |
| ) | Hon. C. Darnell Jones, II |
| Defendant/Movant ) | Senior U.S. District Judge |

## DEFENDANT–APPELLANT'S *PRO SE* NOTICE OF APPEAL

Notice is hereby given that DANIEL RUTHERFORD, Defendant/Movant

in the above named case, hereby appeals to the United States Court of Appeals

for the Third Circuit from the Order of this Court denying Mr.  Rutherford's

motion for compassionate release, filed on April 27, 2023.

Respectfully submitted, this 9th  day of May, 2023.

Daniel Rutherford, *Pro Se*
Register # 59632-066
FCI Bennettsville
P.O. Box 52020
Bennettsville, SC 29512

## DECLARATION OF INMATE FILING & CERTIFICATE OF SERVICE

I am an inmate confined in an institution. I am depositing the foregoing

*Pro Se* Notice of Appeal in this case in the institution's internal mail system,

properly addressed to: U.S. District Clerk's Office, James A. Byrne U.S.

Courthouse, 601 Market Street, Philadelphia, PA 19106. First-class postage is

being prepaid either by me or by the institution on my behalf.

I am also depositing a true and correct copy of the foregoing *Pro Se*

Notice of Appeal in this case in the institution's internal mail system, properly

addressed to: Assistant United States Attorney, Robert A. Zauzmer, Office of

the United States Attorney, 615 Chestnut Street, Suite 1250, Philadelphia, PA

19106. First-class postage is being prepaid either by me or by the institution

on my behalf.

Done and executed under penalty of perjury pursuant to 28 U.S.C.

§1746, on this $\underline{9th}$ day of May, 2023.

Daniel Rutherford, *Pro Se*
Register # 59632-066

2

**JA13**



Mr. Daniel Rutherford
59632 066
FCI Bennettsville
PO Box 52020
Bennettsville, SC. 29512

Legal Mail

Federal Correctional Institution
696 Muckawanna Rd., Lewisburg, S.C. 19518
Date: 05-10-2023
This item of mail was forwarded through Special Mailing
Procedures and was not opened or inspected. If the letter raises a question or concern over which this facility has no jurisdiction, you may wish to return it to the sender for further information or a clarification. If it to writer enclosed correspondence that was not received by an another addressee, please inmail the enclosures to the above address.

18101-150001

RECEIVED
COLUMBIA SC 290
MAY 17 2023
2 L
FOREVER / USA

Office of the Clerk
United State District Court
504 Hamilton Street
Allentown, PA. 18101

**JA14**

## CERTIFICATE OF FILING AND SERVICE

The undersigned hereby certifies that, on January 31, 2024, I caused an electronic copy of the foregoing to be electronically filed with the United States Court of Appeals for the Third Circuit using the CM/ECF system, which will automatically send notification of such filing to counsel of record.

Dated: January 31, 2024

*/s/ Justin B. Berg*

Justin B. Berg