# In the United States Court of Appeals for the Third Circuit

UNITED STATES OF AMERICA,
*Plaintiff-Appellee*

*v.*

DANIEL RUTHERFORD,
*Defendant-Appellant*

*On Appeal from the United States District Court for the Eastern District of Pennsylvania, No. 2:05-cr-126 (Younge, J.)*

## BRIEF OF SENATORS CORY BOOKER AND DICK DURBIN AS AMICI CURIAE IN SUPPORT OF APPELLANT

AMY MASON SAHARIA
  *Counsel of Record*
DANIELLE SOCHACZEVSKI
ERIN L. BROWN
JONATHAN E. SPRATLEY*
WILLIAMS & CONNOLLY LLP
  *680 Maine Avenue SW*
  *Washington, DC 20024*
  *(202) 434-5000*
  *asaharia@wc.com*

*Admitted in New York and practicing law in the District of Columbia pending application for admission to the D.C. Bar under the supervision of bar members pursuant to D.C. Court of Appeals Rule 49(c)(8).

# TABLE OF CONTENTS

Page

INTEREST OF AMICI CURIAE ...................................................1

INTRODUCTION AND SUMMARY OF ARGUMENT ................3

ARGUMENT .................................................................................5

I.  The Sentencing Reform Act Permits the Sentencing Commission to Identify Changes in Law as One Factor Relevant to the Individualized Assessment of "Extraordinary and Compelling Reasons" for Sentence Reduction ............................................................5

   A.  The Sentencing Reform Act Confers Broad Authority on the Commission to Describe "Extraordinary and Compelling Reasons" ...................................5

   B.  The Commission Has Authority to Identify Changes in Law as One Factor Relevant to the Individualized Assessment of "Extraordinary and Compelling Reasons" ..........12

II. The First Step Act Does Not Restrict the Commission's Authority to Identify Changes in Law as One Factor Relevant to the Individualized Assessment of "Extraordinary and Compelling Reasons" ...................................................17

   A.  The First Step Act Does Not Expressly Curtail the Commission's Authority .................................18

   B.  The First Step Act Does Not Impliedly Rescind the Commission's Authority .................................21

III. Section 1B1.13(b)(6) Is a Valid Exercise of the Commission's Authority ..........................................24

CONCLUSION..............................................................................34

# TABLE OF AUTHORITIES

Page

## CASES

*Bittner v. United States*, 598 U.S. 85 (2023) ........................................................14
*Branch v. Smith*, 538 U.S. 254 (2003) ..................................................................21
*Concepcion v. United States*, 597 U.S. 481 (2022) ..................................13, 14, 18
*Dillon v. United States*, 560 U.S. 817 (2010) .........................................................9
*Dorsey v. United States*, 567 U.S. 260 (2012) ........................................................7
*Epic Sys. Corp. v. Lewis*, 584 U.S. 497 (2018) ........................................21, 23, 32
*J.E.M. Ag Supply, Inc. v. Pioneer Hi-Bred Int'l, Inc.*,
    534 U.S. 124 (2001)........................................................................................21
*Kimbrough v. United States*, 552 U.S. 85 (2007) .............................................11, 14
*Koon v. United States*, 518 U.S. 81 (1996) ..............................................................6
*Me. Cmty. Health Options v. United States*, 140 S. Ct. 1308 (2020) ...............23
*Mistretta v. United States*, 488 U.S. 361 (1989) .......................................6, 7, 8, 11
*Morton v. Mancari*, 417 U.S. 535 (1974) ..............................................................21
*Pepper v. United States*, 562 U.S. 476 (2011) .........................................................5
*Peugh v. United States*, 569 U.S. 530 (2013)........................................................7, 9
*Polselli v. IRS*, 598 U.S. 432 (2023) .....................................................................14
*Posadas v. Nat'l City Bank*, 296 U.S. 497 (1936) ................................................21
*Rita v. United States*, 551 U.S. 338 (2007)...........................................7, 8, 12, 17
*Setser v. United States*, 566 U.S. 231 (2012) ........................................................15
*Staples v. United States*, 511 U.S. 600 (1994) ......................................................13
*Tapia v. United States*, 564 U.S. 319 (2011) ..........................................................6
*United States v. Andrews*, 12 F.4th 255 (3d Cir. 2021) ...........................*passim*
*United States v. Berberena*, 694 F.3d 514 (3d Cir. 2012) ..............................8, 11
*United States v. Chen*, 48 F.4th 1092 (9th Cir. 2022)....................................29, 30
*United States v. Introcaso*, 506 F.3d 260 (3d Cir. 2007)......................................13
*United States v. LaBonte*, 520 U.S. 751 (1997) ......................................................8

# STATUTES AND RULE

Page

18 U.S.C.
§ 924 ........................................................................................ 16
§ 3142 ...................................................................................... 30
§ 3553 ................................................................. 9, 28, 29, 30
§ 3582 ................................................................................ *passim*
§ 3582 (2017) .......................................................................... 18
§ 4205 ........................................................................................ 6
28 U.S.C.
§ 991 ................................................................................... *passim*
§ 994 ................................................................................... *passim*
§ 995 ................................................................................... 8, 32
§ 997 ......................................................................................... 8
§ 998 ....................................................................................... 13
First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194 ............ 18
§ 401 ....................................................................................... 18
§ 403 ................................................................................. 18, 22
§ 404 ................................................................................. 18, 22
§ 603 ................................................................................. 18, 19
Parole Commission and Reorganization Act, Pub. L. No. 94-233,
    90 Stat. 219 (1976) ............................................................... 6
Sentencing Reform Act of 1984, Pub. L. No. 98-473, 98 Stat. 1987 ...... 5, 10
Fed. R. App. P. 29 ............................................................................ 1

# OTHER AUTHORITIES

Final Priorities for Amendment Cycle,
    87 Fed. Reg. 67,756 (Nov. 9, 2022) ........................................... 26
Gov't Opp'n to Mot. Reduce Sentence, *United States v. Crews*,
    No. 10-cr-663 (E.D. Pa. Nov. 27, 2023), ECF No. 778 .................... 31
*Hearing on Nominations Before the Sen. Judiciary Comm.*,
    117th Cong. (2022), http://tinyurl.com/2um6xhf4 ........................ 25
Joint Letter from Wayne Andersen, Former U.S. District Judge, et al.,
    to U.S. Sent'g Comm'n (Mar. 14, 2023), http://tinyurl.com/2c6txep8 ......... 28
Letter from Hon. Lynn Adelman to U.S. Sent'g Comm'n,
    http://tinyurl.com/5n8nhp9n ................................................... 28
Letter from Jonathan J. Wroblewski to Hon. Reeves (Feb. 15, 2023),
    http://tinyurl.com/y38e4c4j ..................................................... 28

Other Authorities—continued:

Letter from Hon. Martha Vázquez to U.S. Sent'g Comm'n
(Mar. 7, 2023), http://tinyurl.com/mry6uusv....................................28

Letter from Senators Cory A. Booker, Richard J. Durbin, and Mazie K.
Hirono to Hon. Reeves (Mar. 14, 2023),
http://tinyurl.com/4dwyubfs ..............................................27, 28

Brent E. Newton & Dawinder S. Sidhu, *The History of the Original
United States Sentencing Commission, 1985-1987*,
45 Hofstra L. Rev. 1167 (2017)...........................................6

Press Release, Booker Statement on Senate Passage of Landmark
Criminal Justice Reform Bill (Dec. 18, 2018),
http://tinyurl.com/8stdn5vb ..............................................1, 2

Press Release, Durbin Meets with U.S. Sentencing Commission on
Implementing Provisions in First Step Act into Sentencing
Guidelines (Dec. 7, 2022), http://tinyurl.com/yc7fr6kh...................2

Proposed Priorities for Amendment Cycle,
87 Fed. Reg. 60,438 (Oct. 5, 2022)......................................26

S. Rep. No. 98-225 (1983) .............................................6, 9, 32

Sentencing Guidelines for United States Courts, 88 Fed. Reg.
7180 (Feb. 2, 2023) ....................................................26, 27
28,254 (May 3, 2023) ..................................................27, 28, 29

Christie Thompson, *Frail, Old and Dying, but Their Only Way Out of
Prison Is a Coffin*, N.Y. Times (Mar. 7, 2018),
http://tinyurl.com/bdh7p6m9 ...........................................19

U.S. Dep't of Just., *The Federal Bureau of Prisons' Compassionate
Release Program* (Apr. 2013), http://tinyurl.com/m8uue3a.............19

U.S.S.G.
§ 1B1.13..............................................................*passim*
Supp. App. C, Amend. 698 ..............................................12
Supp. App. C, Amend. 799 ..............................................12, 19
Supp. App. C, Amend. 814 ..............................................12

U.S. Sent'g Comm'n, *2018 Annual Report*, http://tinyurl.com/38fxrxhy........24

U.S. Sent'g Comm'n, *2022 Annual Report*,
http://tinyurl.com/47vct49n ...........................................24, 26

Other Authorities—continued:

U.S. Sent'g Comm'n, *2011 Report to the Congress: Mandatory Minimum Penalties in the Federal Criminal Justice System* (Oct. 2011), http://tinyurl.com/vb8jdvwu ........................................ 16

U.S. Sent'g Comm'n, *Compassionate Release Data Report: Fiscal Year 2023, 3rd Quarter* (Sept. 2023), http://tinyurl.com/y2rsc9dc ...................... 20

U.S. Sent'g Comm'n, *Compassionate Release Data Report: Fiscal Years 2020 to 2022* (Dec. 2022), http://tinyurl.com/2prr62au ..................... 25

U.S. Sent'g Comm'n, *Organization*, http://tinyurl.com/mphuz7jd ................. 25

U.S. Sent'g Comm'n, Pub. Meeting, Tr. (Feb. 23, 2023), http://tinyurl.com/bdv5zttz ............................................................... 25, 26, 27

U.S. Sent'g Comm'n, *Rules of Practice and Procedure* (2016)
4.1 .......................................................................................................... 8
4.3 .......................................................................................................... 8

U.S. Sent'g Comm'n, *Sample of Public Comment Received on Proposed Amendments: 88 FR 7180* (Mar. 2023), http://tinyurl.com/4ees2jx8 ............................................................... 27

Amicus curiae Senator Cory Booker has represented the State of New Jersey in the United States Senate since 2013. Senator Booker is a member of the Senate Judiciary Committee and chairs its Subcommittee on Criminal Justice and Counterterrorism, which oversees the United States Sentencing Commission. Throughout his time in the Senate, Senator Booker has advocated for commonsense legislative solutions to reform the country's broken criminal justice system, end mass incarceration, and promote successful reintegration for returning citizens.

Amicus curiae Senator Dick Durbin has represented the State of Illinois in the United States Senate since 1997. Senator Durbin chairs the Senate Judiciary Committee. He was the lead sponsor of the Fair Sentencing Act of 2010. Both Senators Booker and Durbin were lead sponsors of the First Step Act of 2018, a landmark, bipartisan criminal justice reform bill that "break[s] from the decades of failed policies that led to mass incarceration." Press

---

[*] Senators Booker and Durbin file this brief with the consent of all parties. *See* Fed. R. App. P. 29(a)(2). No party or party's counsel authored this brief in whole or in part or contributed money that was intended to fund preparing or submitting the brief. No person other than Senators Booker and Durbin and their counsel contributed money that was intended to fund preparing or submitting the brief. *See* Fed. R. App. P. 29(a)(4)(E).

Release, Booker Statement on Senate Passage of Landmark Criminal Justice Reform Bill (Dec. 18, 2018).[1] Since the passage of the First Step Act, Senators Booker and Durbin have advocated for the Sentencing Commission to implement the Act through updated guidelines and policy statements, including with respect to courts' authority to reduce sentences. *See* Press Release, Durbin Meets with U.S. Sentencing Commission on Implementing Provisions in First Step Act into Sentencing Guidelines (Dec. 7, 2022).[2]

Senators Booker and Durbin have a strong interest in the sound interpretation of the federal sentencing laws as they relate to the Sentencing Commission's authority to issue policy statements regarding compassionate release. The Senators submit this brief to explain why the Commission's recent policy statement regarding compassionate release validly exercises the broad authority that Congress conferred on the Commission.

---

[1] http://tinyurl.com/8stdn5vb.

[2] http://tinyurl.com/yc7fr6kh.

## INTRODUCTION AND SUMMARY OF ARGUMENT

Congress expressly delegated to the Sentencing Commission the authority to "describe what should be considered extraordinary and compelling reasons for sentence reduction [under 18 U.S.C. § 3582(c)(1)(A)], including the criteria to be applied and a list of specific examples." 28 U.S.C. § 994(t). The Commission's policy statement at section 1B1.13(b)(6) of the Guidelines Manual, allowing courts to consider certain changes in law among other factors when determining whether an extraordinary and compelling reason exists, validly exercises that authority.

I.     In the Sentencing Reform Act of 1984, Congress vested the Sentencing Commission with broad authority to set national sentencing policies and practices to increase fairness and uniformity in federal sentences, and gave the Commission the tools to do so. One of the duties that Congress conferred on the Commission is to issue policy statements describing reasons that courts should consider extraordinary and compelling when evaluating motions for sentence reduction under 18 U.S.C. § 3582(c)(1)(A). Congress imposed one and only one limitation on the Commission's authority to identify such reasons:  rehabilitation alone does not suffice. Congress did not bar the Commission from identifying changes in law that produce unfairly disparate

3

sentences as extraordinary and compelling reasons when considered alongside other individual circumstances.

II.    In the First Step Act of 2018, Congress created a new procedure for obtaining compassionate release by allowing defendants to file motions for compassionate release themselves.  In doing so, Congress did not alter the scope of the Sentencing Commission's authority or the substantive standards governing compassionate release.  Congress' decision not to give categorical retroactive effect to certain changes in law in the First Step Act is wholly unrelated to the Commission's preexisting authority to allow courts to consider changes in law in determining whether extraordinary and compelling reasons for sentence reduction exist in individual cases.  As before, the Commission retains the authority to promulgate policy statements that identify changes in law as a factor in determining whether extraordinary and compelling reasons are present in individual cases.

III.   The Sentencing Commission's policy statement at section 1B1.13(b)(6) validly identifies certain circumstances in which courts may consider changes in law in determining whether a defendant presents an extraordinary and compelling reason for sentence reduction.    After considering commentary from interested parties on its proposed policy

statement, the Commission issued final language that refined the circumstances in which courts may consider changes in law in the extraordinary-and-compelling analysis in individual cases. Nothing in the Sentencing Reform Act or the First Step Act prevented the Sentencing Commission from adopting this policy statement. And the policy statement, adopted pursuant to an express delegation of authority by Congress, does not offend separation-of-powers principles.

## ARGUMENT

I. **The Sentencing Reform Act Permits the Sentencing Commission to Identify Changes in Law as One Factor Relevant to the Individualized Assessment of "Extraordinary and Compelling Reasons" for Sentence Reduction**

A. **The Sentencing Reform Act Confers Broad Authority on the Commission to Describe "Extraordinary and Compelling Reasons"**

1. Federal courts' authority to reduce an imprisonment term if "extraordinary and compelling reasons warrant such a reduction" originated in the Sentencing Reform Act of 1984, a landmark reform bill that caused a sea change in the federal sentencing system. Pub. L. No. 98-473, § 212(a)(2), 98 Stat. 1987, 1998-99 (codified as amended at 18 U.S.C. § 3582(c)(1)(A)); *see Pepper v. United States*, 562 U.S. 476, 488-89 (2011).

Before 1984, authority to set and alter the length of federal sentences rested with three actors outside of Congress:  the Parole Commission, the Bureau of Prisons (BOP), and courts.  The Parole Commission had discretion to grant or deny parole after a prisoner served a minimum amount of his sentence.  *See Tapia v. United States*, 564 U.S. 319, 323-25 (2011); Parole Commission and Reorganization Act, Pub. L. No. 94-233, § 2, 90 Stat. 219, 220, 222 (1976) (codified at 18 U.S.C. §§ 4203(b)(1), 4205(b)).  On BOP's motion, a court could hasten a prisoner's eligibility for parole by reducing the minimum required term.  90 Stat. at 223 (codified at 18 U.S.C. § 4205(g)).  Sentencing judges, knowing that the Parole Commission might release defendants early, would sometimes adjust prison terms accordingly, which produced "an unjustifiably wide range of sentences to offenders with similar histories, convicted of similar crimes, [and] committed under similar circumstances." *Koon v. United States*, 518 U.S. 81, 92 (1996) (quoting S. Rep. No. 98-225, at 38 (1983)); *see Mistretta v. United States*, 488 U.S. 361, 365-66 (1989); Brent E. Newton & Dawinder S. Sidhu, *The History of the Original United States Sentencing Commission, 1985-1987*, 45 Hofstra L. Rev. 1167, 1173-74 (2017).

In the Sentencing Reform Act, Congress sought to address these problems and otherwise "increase transparency, uniformity, and

6

proportionality in sentencing" by introducing a new actor, the Sentencing Commission. *Dorsey v. United States*, 567 U.S. 260, 265 (2012); *Peugh v. United States*, 569 U.S. 530, 535 (2013). Congress created the Commission as an "expert body" that would help to replace the disjointed discretion of the old sentencing system with uniformity and fairness in the new one. *See Mistretta*, 488 U.S. at 412. The Commission's "basic objectives," set out by Congress, *Rita v. United States*, 551 U.S. 338, 348 (2007), include "provid[ing] certainty and fairness" in meeting the goals of sentencing, by "avoiding unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar criminal conduct while maintaining sufficient flexibility to permit individualized sentences," as well as "reflect[ing], to the extent practicable, advancement in knowledge of human behavior as it relates to the criminal justice process," 28 U.S.C. § 991(b)(1)(B)-(C).

Congress vested the Commission with broad powers to set federal sentencing policies and practices nationwide, along with the information-gathering tools needed to perform its functions. With an "affirmative vote of at least four members," the Commission "promulgate[s] and distribute[s] to all courts of the United States" guidelines and policy statements regarding sentencing. 28 U.S.C. § 994(a)(1)-(2). To better fulfill its duties, the

Commission can request information from any other federal agency or judicial officer; hold hearings and call witnesses; and collect data from public and private agencies. *Id.* § 995(a)(8), (13), (21). By statute, the Commission's proposed guidelines are subject to the notice-and-comment requirements of the Administrative Procedure Act, and by practice, the Commission also opens its proposed policy statements to comment. 28 U.S.C. § 994(x); *see* U.S. Sent'g Comm'n, *Rules of Practice and Procedure* 4.3 (2016). The Commission receives input from all comers—ranging from members of Congress to the public—before editing its Guidelines Manual. *See Rita*, 551 U.S. at 350.

In the exercise of its substantial authority, the Commission remains "fully accountable" to Congress. *Mistretta*, 488 U.S. at 393; *United States v. Berberena*, 694 F.3d 514, 525 (3d Cir. 2012). The Commission must report to Congress at least annually, and its proposed amendments are subject to Congress' disapproval and modification. 28 U.S.C. §§ 994(p), 997; *see* U.S. Sent'g Comm'n, *Rules of Practice and Procedure* 4.1. And of course, the Commission must exercise its authority subject to the strictures of federal statutes. *See United States v. LaBonte*, 520 U.S. 751, 757 (1997); *accord* 28 U.S.C. § 994(a).

2. When Congress created the Sentencing Commission, it simultaneously abolished the parole system. *See Peugh*, 569 U.S. at 535. The Sentencing Reform Act generally prevents courts from modifying sentences, with some exceptions. *See Dillon v. United States*, 560 U.S. 817, 824 (2010) (citing 18 U.S.C. § 3582(b)). One such exception is the compassionate-release provision, which permits courts to "reduce the term of imprisonment" if "extraordinary and compelling reasons warrant such a reduction."[3] 18 U.S.C. § 3582(c)(1)(A). Courts may reduce a sentence only "after considering the factors" in 18 U.S.C. § 3553(a), and only if the reduction "is consistent with applicable policy statements issued by the Sentencing Commission."[4] *Id.* § 3582(c)(1)(A). As originally enacted, the Sentencing Reform Act allowed

---

[3] Congress recognized that "an eventual reduction in the length of a term of imprisonment is justified by changed circumstances," including for example, "cases of severe illness, cases in which other extraordinary and compelling circumstances justify a reduction of an unusually long sentence, and some cases in which the sentencing guidelines for the offense of which the defender was convicted have been later amended to provide a shorter term of imprisonment." S. Rep. No. 98-225, at 55-56.

[4] Although courts' reduction decisions must be "consistent with applicable policy statements issued by the Sentencing Commission," the Sentencing Reform Act authorized courts to grant compassionate release when the Commission has not issued any applicable policy statements. *See United States v. Andrews*, 12 F.4th 255, 259 & n.4 (3d Cir. 2021) (quotation omitted).

these reductions only "upon motion of the Director of the Bureau of Prisons." 98 Stat. at 1998-99.

Congress simultaneously conferred authority on the Sentencing Commission to steer courts' compassionate-release decisions. The Sentencing Reform Act directs the Commission to issue policy statements regarding "the appropriate use of . . . the sentence modification provisions" in 18 U.S.C. § 3582(c). 28 U.S.C. § 994(a)(2). More specifically, Congress delegated to the Commission authority to issue policy statements that "describe what should be considered extraordinary and compelling reasons for sentence reduction" under 18 U.S.C. § 3582(c)(1)(A), "including the criteria to be applied and a list of specific examples." 28 U.S.C. § 994(t). Congress imposed only one limitation on the Commission's authority: "Rehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason." *Id.*

Congress' express delegation of this authority to the Commission reflects Congress' view that the Commission is best positioned to identify the "extraordinary and compelling reasons" that may warrant a sentence reduction. Unlike any other actor in our federal system, the Commission combines judicial experience, sentencing expertise, and national data-gathering tools—all while remaining accountable to Congress. The

10

Sentencing Reform Act "placed the Commission in the Judicial Branch precisely because of the Judiciary's special knowledge and expertise" in sentencing, *Mistretta*, 488 U.S. at 396, and the Commission's required membership includes at least three federal judges, 28 U.S.C. § 991(a). At the same time, the Commission "has the capacity courts lack to base its determinations on empirical data and national experience, guided by a professional staff with appropriate expertise." *Kimbrough v. United States*, 552 U.S. 85, 109 (2007) (quotation omitted).

The Commission's compassionate-release policies—like all its policies—are subject to congressional control. Congress can direct the Commission to change a policy statement or overrule its proposed amendments "at any time." *Berberena*, 694 F.3d at 524 (quotations omitted). And although the Commission's proposed policy statements need not undergo the mandatory congressional review period that applies to guidelines amendments, the Commission's practice is to "include amendments to policy statements and commentary in any submission of guideline amendments to Congress." *Id.* at 524 n.13 (quotation omitted).

By authorizing the Commission to issue "policy statements" (plural) on compassionate release, 28 U.S.C. § 994(t), Congress contemplated that the

Commission would issue multiple policy statements over time as it gained additional awareness of the circumstances that warrant sentence reductions. Indeed, the Sentencing Reform Act encouraged such changes, tasking the Commission with "reflect[ing] . . . advancement in knowledge of human behavior." *Id.* § 991(b)(1)(C). Congress "fore[saw] continuous evolution" in the Commission's work. *Rita*, 551 U.S. at 350.

The Commission responded in kind, substantially revising its description of "extraordinary and compelling reasons" three times. *See* U.S.S.G. Supp. App. C, Amends. 698, 799, 814 (effective 2007, 2016, and 2023). The Commission's power encompasses both setting and refining over time federal sentencing policy on compassionate release, allowing it to guide courts as it advances the purposes of sentencing, however incrementally. *See* 28 U.S.C. § 991(b)(1).

**B.    The Commission Has Authority to Identify Changes in Law as One Factor Relevant to the Individualized Assessment of "Extraordinary and Compelling Reasons"**

Under the Sentencing Reform Act, the Commission may allow courts to consider certain changes in law in determining whether a defendant presents an extraordinary and compelling reason for a sentence reduction under appropriate circumstances. As always, ascertaining Congress' intent begins

with the text of the Sentencing Reform Act. *See United States v. Introcaso*, 506 F.3d 260, 264 (3d Cir. 2007) (citing *Staples v. United States*, 511 U.S. 600, 605 (1994)). The text's featured phrase, "extraordinary and compelling," is capacious and elastic by design. Though Congress defined other statutory terms in the Sentencing Reform Act, *see, e.g.*, 28 U.S.C. § 998, it left this "amorphous" phrase undefined, *see United States v. Andrews*, 12 F.4th 255, 260 (3d Cir. 2021), specifically empowering the Commission to describe fitting circumstances within its parameters. An "extraordinary and compelling" change in law may justify compassionate release in certain circumstances, and the Commission has the authority to identify which ones. *See* 28 U.S.C. § 994(t).

In light of the Act's express delegation to the Commission, any restriction on the Commission's power to recognize a reason as extraordinary and compelling must come from "Congress in a statute" or the Constitution. *Concepcion v. United States*, 597 U.S. 481, 494 (2022). Congress has imposed only one limitation on the Commission's authority to describe "extraordinary and compelling reasons"—rehabilitation alone does not suffice. 28 U.S.C. § 994(t). Under the *expressio unius est exclusio alterius* canon, Congress' inclusion of this singular restriction weighs against reading others into the

statute. *See Bittner v. United States*, 598 U.S. 85, 94-95 (2023). "Had Congress wanted to include" other restrictions, "it certainly knew how to do so." *Polselli v. IRS*, 598 U.S. 432, 439 (2023); *see Kimbrough*, 552 U.S. at 103 ("Congress has shown that it knows how to direct sentencing practices in express terms"). Congress is "not shy about placing . . . limits" on sentencing courts' discretion in sentence-modification proceedings "where it deems them appropriate," but apart from the sole constraint on rehabilitation, Congress has otherwise left it to the Commission to cabin courts' discretion (or not). *Concepcion*, 597 U.S. at 494.

In addition, nothing about the plain meaning of the terms "extraordinary" and "compelling" excludes changes in law. *See* Appellant Br. 34-35 (providing dictionary definitions). The Sentencing Reform Act therefore does not prohibit the Commission—or, in the absence of an applicable policy statement, courts—from recognizing changes in law as one factor in the extraordinary-and-compelling analysis. *See supra* n.4.

Not every change in law may be extraordinary and compelling, but some can be when viewed in the context of an individual case. To be sure, when Congress changes criminal penalties, its "convention[]" is to make those changes nonretroactive. *Andrews*, 12 F.4th at 261. But changes to criminal

penalties are themselves rare, and they may produce a disparity so extreme or unjust as to create an extraordinary and compelling reason in an individual case, when considered in the context of the defendant's personal circumstances. For example, where a defendant was sentenced under an inordinately harsh statutory penalty, Congress' later decision to mitigate that severity might be an extraordinary and compelling reason to grant a sentence reduction in the defendant's case. Section 3582(c)(1)(A) "provides a mechanism for relief" when post-sentencing developments "produce[] unfairness to the defendant." *Setser v. United States*, 566 U.S. 231, 243 (2012). Just like with aging or health-related challenges a defendant may face, the extraordinary-and-compelling analysis focuses not on whether the condition is itself rare, but on whether, among other considerations, it produces an exceptional reason to reconsider that defendant's sentence.

Of course, this assessment necessarily turns on the individual circumstances of each defendant's case, including the magnitude of the change in law and the resulting disparity in sentences; the length of the defendant's sentence; the nature of the defendant's crimes of conviction; the defendant's personal circumstances; and the danger the defendant poses to the community, among other factors.

Identifying the circumstances in which a change in law can, together with other individualized considerations, produce an extraordinary and compelling reason for a sentence reduction is well within the authority and expertise of the Commission. The Commission routinely studies sentencing outcomes nationwide, with an eye toward diagnosing unwarranted disparities and detecting other shortcomings in the sentencing system's fulfillment of its purposes. *See* 28 U.S.C. § 991(b)(2) (describing the Commission's purpose of "develop[ing] means of measuring the degree to which the sentencing, penal, and correctional practices are effective in meeting the purposes of sentencing"). For instance, the Commission has periodically assessed the circumstances under which mandatory minimum penalties have produced unjust outcomes. *See, e.g.*, U.S. Sent'g Comm'n, *2011 Report to the Congress: Mandatory Minimum Penalties in the Federal Criminal Justice System* 359 (Oct. 2011)[5] ("The 'stacking' of mandatory minimum penalties for multiple violations of [title 18] section 924(c) results in excessively severe and unjust sentences in some cases.").

---

[5] http://tinyurl.com/vb8jdvwu.

Applying its expertise and aided by public input and the adjudicatory experience of courts nationwide, the Commission can study the circumstances in which a change in law may constitute an extraordinary and compelling reason for a sentence reduction in individual cases and issue a policy statement reflecting its conclusions. *See Rita*, 551 U.S. at 350. When it does so, courts may then utilize their "access to, and greater familiarity with, the individual case and the individual defendant" to determine whether a change in law is extraordinary and compelling in a given case. *Id.* at 357.

## II. The First Step Act Does Not Restrict the Commission's Authority to Identify Changes in Law as One Factor Relevant to the Individualized Assessment of "Extraordinary and Compelling Reasons"

In arguing that the Commission lacks authority to identify changes in law as extraordinary and compelling reasons for sentence reduction, the government has leaned heavily on the argument that Congress' decision not to make certain First Step Act reforms categorically retroactive means that the Commission cannot describe these changes as "extraordinary and compelling." This argument misunderstands the First Step Act. Nothing in the Act—explicitly or implicitly—diminishes the Commission's express authority to describe the specific circumstances where changes in law should constitute "extraordinary and compelling reasons" for a sentence reduction.

**A.** **The First Step Act Does Not Expressly Curtail the Commission's Authority**

Decades after creating the Sentencing Commission, Congress passed the First Step Act of 2018. Pub. L. No. 115-391, 132 Stat. 5194 (2018). With broad bipartisan support, including from Senators Booker and Durbin as two of the Act's sponsors, the First Step Act achieved much-needed criminal justice reforms. Title IV of the First Step Act, entitled "Sentencing Reform," introduced several important changes to sentencing law. First, the Act prospectively reduced certain draconian mandatory minimum sentences. *See id.* §§ 401, 403. Second, the Act authorized district courts to "impose a reduced sentence" for defendants convicted of certain crack-cocaine offenses "as if" reduced penalties "were in effect" at the time of the offenses. *Id.* § 404(b); *Concepcion*, 597 U.S. at 488.

In a separate title of the Act (Title VI), Congress made one change to the compassionate-release provision. It created a new procedural pathway for compassionate release by permitting prisoners themselves to move for a sentence reduction if BOP refuses. First Step Act § 603(b)(1).

Before the First Step Act, only BOP could move for compassionate release. *See* 18 U.S.C. § 3582(c)(1)(A) (2017). BOP seldom used this power. In a 2013 report, DOJ's Inspector General admonished BOP for its poor and

inconsistent management of the compassionate-release program, with an average annual release of just twenty-four individuals. *See* U.S. Dep't of Just., *The Federal Bureau of Prisons' Compassionate Release Program* 1 (Apr. 2013).[6] Responding to this report and public criticism, the Commission issued a policy statement in 2016 that broadened its examples and criteria and encouraged BOP to move for compassionate release whenever "extraordinary and compelling reasons" exist. U.S.S.G. Supp. App. C, Amend. 799. Still, BOP persisted in its low grant rates, approving just 6 percent of compassionate-release applications from 2013 to 2017. *See* Christie Thompson, *Frail, Old and Dying, but Their Only Way Out of Prison Is a Coffin*, N.Y. Times (Mar. 7, 2018).[7]

Congress intervened in the First Step Act by eliminating the bottleneck caused by BOP's gatekeeping role. In making this change, Congress sought to "increas[e] the use and transparency of compassionate release." *See* First Step Act § 603(b) (capitalization omitted). The new procedural avenue worked as intended. Between October 2019 and June 2023, over 30,000 motions for

---

[6] http://tinyurl.com/m8uue3a.

[7] http://tinyurl.com/bdh7p6m9.

compassionate release were filed and nearly 5,000 were granted. *See* U.S. Sent'g Comm'n, *Compassionate Release Data Report: Fiscal Year 2023, 3rd Quarter*, at tbl.1 (Sept. 2023).[8]

But this new procedural pathway was just that—procedural. It did not alter the "extraordinary and compelling reasons" standard that governs compassionate release. Likewise, it did not change the requirement that any sentencing "reduction [be] consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A). Nor did it touch the Commission's authority to issue policy statements regarding "the sentence modification provisions set forth in . . . [section] 3582(c)," 28 U.S.C. § 994(a)(2)(C), or to "describe what should be considered extraordinary and compelling reasons" for purposes of compassionate release, *id.* § 994(t). Apart from adding the new procedural avenue, the First Step Act left "the rest of the compassionate-release framework unchanged." *Andrews*, 12 F.4th at 258. The statutory bar on "[r]ehabilitation of the defendant alone" remains the sole express limitation on the Commission's latitude to describe "extraordinary and compelling reasons for sentence reduction." 28 U.S.C. § 994(t).

---

[8] http://tinyurl.com/y2rsc9dc.

**B.    The First Step Act Does Not Impliedly Rescind the Commission's Authority**

Absent any provision of the First Step Act expressly constraining the Commission's authority to describe "extraordinary and compelling reasons," the government must necessarily contend that Congress did so *implicitly*.  On the government's view, the nonretroactivity of the penalty reforms in the First Step Act forbids the Commission from considering those changes in law as "extraordinary and compelling."   That repeal by silence argument is unpersuasive.

Repeals by implication are disfavored.  *See Morton v. Mancari*, 417 U.S. 535, 549 (1974).  Bedrock principles of separation of powers dictate a "strong presumption" that "Congress will specifically address preexisting law when it wishes to suspend its normal operations in a later statute." *Epic Sys. Corp. v. Lewis*, 584 U.S. 497, 510 (2018) (cleaned up).  Courts will find an implied repeal only if "provisions in two statutes are in 'irreconcilable conflict,' or where the latter Act covers the whole subject of the earlier one and 'is clearly intended as a substitute.'"  *Branch v. Smith*, 538 U.S. 254, 273 (2003) (plurality op.) (quoting *Posadas v. Nat'l City Bank*, 296 U.S. 497, 503 (1936)).  Unsurprisingly, this "stringent standard" is rarely met.  *J.E.M. Ag Supply, Inc. v. Pioneer Hi-Bred Int'l, Inc.*, 534 U.S. 124, 142 (2001) (citation omitted).

This standard is not met here. Far from creating an "irreconcilable conflict," Congress' decision not to make certain First Step Act penalty reforms retroactive as a categorical matter is entirely compatible with Congress' separate directive that an expert deliberative body describe the "extraordinary and compelling reasons" that courts will assess on an *individualized* basis to determine eligibility for compassionate release. Considerations of fairness and finality, among other factors, affect Congress' decision whether to make penalty changes retroactive. Weighing those factors, Congress may choose from a range of retroactivity options, from automatic vacatur of sentences to across-the-board eligibility for case-by-case resentencing, or anything in between. *See, e.g.*, First Step Act § 404(b) (categorical eligibility for resentencing for qualified defendants). Or Congress may decide against providing any form of blanket retroactivity. *See, e.g.*, *id.* § 403(b). But that legislative choice on how to approach retroactivity across all relevant cases does not bear on what might be an "extraordinary and compelling reason" to *consider* whether compassionate release of a particular individual is warranted.

The Commission's delegated authority to describe "extraordinary and compelling reasons" for compassionate release stands separate and apart from

Congress' retroactivity decisions. The Commission does not infringe Congress' retroactivity judgments (or the presumption against retroactivity for that matter) by exercising the power that Congress gave it to describe "extraordinary and compelling" reasons for compassionate release in individual cases.

No disharmony exists between the First Step Act's nonretroactivity provisions and the Commission's section 994(t) authority—much less an *irreconcilable* conflict. The First Step Act does not mention the "extraordinary and compelling" standard of section 3582(c)(1)(A) or even hint at a wish to displace the Commission's authority under section 994(t)—let alone do so "clear[ly] and manifest[ly]," as the repeal-by-implication standard requires. *See Me. Cmty. Health Options v. United States*, 140 S. Ct. 1308, 1323 (2020) (citations omitted). Courts cannot pick and choose between statutes but rather must regard both as fully effective. *See id.*; *Epic Sys.*, 584 U.S. at 510-11. That's easy enough here: The First Step Act's nonretroactive changes to criminal penalties do not make defendants previously sentenced eligible for resentencing. And the Commission retains its authority under section 994(t) to describe "extraordinary and compelling reasons" for compassionate release in individual cases.

## III. Section 1B1.13(b)(6) Is a Valid Exercise of the Commission's Authority

1.    The Commission's recent policy statement, implemented in relevant part at section 1B1.13(b)(6), is perfectly consistent with governing law.   Congress expressly directed the Commission to describe via policy statements "what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples."   28 U.S.C. § 994(t).   Congress expected that, after it enacted the First Step Act, the Commission would update its policy statement to guide courts' discretion in deciding defendant-filed compassionate-release motions. But two weeks after the First Step Act became law, the Commission lost its quorum of voting members and was incapacitated for several years. *See* U.S. Sent'g Comm'n, *2022 Annual Report* 2;[9] U.S. Sent'g Comm'n, *2018 Annual Report* 2.[10]

During that multi-year period without a quorum, most courts of appeals held that the Commission's then-existing policy statement was inapplicable to defendant-filed motions. *See Andrews*, 12 F.4th at 259 (collecting cases).   This

---

[9] http://tinyurl.com/47vct49n.

[10] http://tinyurl.com/38fxrxhy.

left most district courts without an applicable policy statement to direct their review of defendant-filed compassionate-release motions. In this void, thousands of compassionate-release motions filed during the COVID-19 pandemic exposed significant geographic disparities in grant rates: 9.6 percent granted in the Fifth and Eighth Circuits versus 28.8 percent in the First and D.C. Circuits. U.S. Sent'g Comm'n, *Compassionate Release Data Report: Fiscal Years 2020 to 2022*, at tbl.3 (Dec. 2022).[11]

Members of the Senate Judiciary Committee across the political spectrum recognized the importance of "restor[ing] the Commission's quorum and enabl[ing] the Commission to resume its important work," including "the critical task of implementing the First Step Act" and, chiefly, "changes to compassionate release." *Hearing on Nominations Before the Sen. Judiciary Comm.*, 117th Cong. (2022) (statements of Chair Durbin and Sen. Grassley).[12] The current commissioners "were nominated and confirmed in an overwhelmingly bipartisan spirit," and they are individuals from diverse races, States, and legal backgrounds. U.S. Sent'g Comm'n, Pub. Meeting, Tr. at 6

---

[11] http://tinyurl.com/2prr62au.

[12] http://tinyurl.com/2um6xhf4.

(Feb. 23, 2023) [hereinafter Pub. Meeting] (statement of Hon. Carlton W. Reeves).[13] As required, three are current federal judges. U.S. Sent'g Comm'n, *Organization*.[14]

With its quorum restored, the Commission's number-one priority was updating its policy statement at section 1B1.13 to "implement the First Step Act" and "further describe what should be considered extraordinary and compelling reasons." Proposed Priorities for Amendment Cycle, 87 Fed. Reg. 60,438, 60,439 (Oct. 5, 2022). The Commission received over 8,000 public comments—"by far the most" ever received—on its proposed priorities. U.S. Sent'g Comm'n, *2022 Annual Report*, *supra*, at 5. After reviewing the public comments, updating section 1B1.13 remained the Commission's top priority for the amendment cycle. Final Priorities for Amendment Cycle, 87 Fed. Reg. 67,756, 67,756 (Nov. 9, 2022). The Commission then published a notice and request for public comment and hearing on its proposed amendments. Sentencing Guidelines for United States Courts, 88 Fed. Reg. 7180 (Feb. 2, 2023). One proposal was to add to the description of "extraordinary and compelling reasons": "*Changes in Law*.—The defendant is serving a sentence

---

[13] http://tinyurl.com/bdv5zttz.

[14] http://tinyurl.com/mphuz7jd.

that is inequitable in light of changes in the law." *Id.* at 7184. The Commission indicated a "heightened interest" in suggestions regarding this proposal, stressing its openness to public comment. *Id.* at 7180.

Again, the Commission received and considered substantial comments—some supporting, some opposing, and some suggesting a more tailored approach to adding changes in law to the Commission's description of "extraordinary and compelling reasons."[15] In strong support of the changes-in-law proposal, for example, Senators Booker and Durbin, along with Senator Hirono, submitted commentary observing that "[t]he statutory language of § 3582(c)(1)(A) is certainly broad enough to encompass legal changes which have occurred since the defendant's original sentencing." Letter from Senators Cory A. Booker, Richard J. Durbin, and Mazie K. Hirono to Hon. Reeves 2 (Mar. 14, 2023).[16] They noted, however, that a change in law "alone

---

[15] *See* U.S. Sent'g Comm'n, *Sample of Public Comment Received on Proposed Amendments: 88 FR 7180* (Mar. 2023), http://tinyurl.com/4ees2jx8. The Commission also held public hearings on its proposed amendments. *See* Sentencing Guidelines for United States Courts, 88 Fed. Reg. 28,254, 28,254 (May 3, 2023). Chair Carlton Reeves said to the public on the first day of hearings: "The Commission's policies need to reflect not just our perspectives, but your research, your data, your experiences." Pub. Meeting, *supra*, at 9.

[16] http://tinyurl.com/4dwyubfs.

would not entitle [a defendant] to relief," as courts would still have to consider the remainder of section 1B1.13 and the section 3553(a) factors. *Id.* Many current and former federal judges supported the Commission's recognition that post-sentencing changes in law may, in appropriate cases, qualify as "extraordinary and compelling reasons" for sentence reduction.[17]

On the other hand, while the Department of Justice "encourage[d] the Commission to clearly articulate . . . the circumstances where compassionate release is appropriate," and voiced its shared concern "about equity in the criminal justice system, including as it pertains to *unusually long sentences*," it opposed the changes-in-law proposal as written. Letter from Jonathan J. Wroblewski to Hon. Reeves 2, 6 (Feb. 15, 2023) (emphasis added).[18]

2. The Commission responded by meaningfully narrowing its policy statement. *See* Appellant Br. 35-36. The revised policy statement, which the Commission submitted to Congress and which became effective, contains no less than five guardrails. *See* Sentencing Guidelines for United States Courts,

---

[17] *See*, *e.g.*, Joint Letter from Wayne Andersen, Former U.S. District Judge, et al., to U.S. Sent'g Comm'n 1-2 (Mar. 14, 2023), http://tinyurl.com/2c6txep8; Letter from Hon. Lynn Adelman to U.S. Sent'g Comm'n, http://tinyurl.com/5n8nhp9n; Letter from Hon. Martha Vázquez to U.S. Sent'g Comm'n (Mar. 7, 2023), http://tinyurl.com/mry6uusv.

[18] http://tinyurl.com/y38e4c4j.

88 Fed. Reg. 28,254, 28,255 (May 3, 2023). A change in law "*may be considered* in determining whether the defendant presents an extraordinary and compelling reason," but "*only* where": (1) the sentence is "unusually long"; (2) the defendant has served at least 10 years in prison; (3) the change in law is not a nonretroactive amendment to the Guidelines Manual; (4) the change in law produces a "gross disparity" between the existing sentence and the likely contemporaneous sentence; and (5) there is "full consideration of the defendant's individualized circumstances." U.S.S.G. § 1B1.13(b)(6) (emphasis added). The Commission also added a "Limitation on Changes in Law" provision prohibiting consideration of changes in law in the extraordinary-and-compelling analysis outside of these bounds. *Id.* § 1B1.13(c).

The policy statement, in its final form, specifies that courts are *permitted* to find an extraordinary and compelling reason based on changes in law if these conditions are satisfied. Doing so is not mandatory. And only if a court decides, in its discretion, that an extraordinary and compelling reason exists in an individual case does it proceed to analyze the section 3553(a) factors to decide whether to reduce the sentence. The policy statement does not make any defendant automatically eligible for a sentence reduction. *Cf. United States v. Chen*, 48 F.4th 1092, 1100 (9th Cir. 2022). "To obtain a

sentence reduction based in part on . . . non-retroactive changes, each defendant will have to overcome many more obstacles than a defendant who is automatically eligible for a resentencing due to a truly retroactive change in the law." *Id.* For example, the defendant still must demonstrate that the changes in law "rise to the level of 'extraordinary and compelling' in his individualized circumstances," and the district court must consider administrative exhaustion and the section 3553(a) factors. *Id.* (citing 18 U.S.C. § 3582(c)(1)). Additionally, the court must find that "[t]he defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." U.S.S.G. § 1B1.13(a)(2).

3.    The Commission was well within its authority to describe gross sentencing disparities arising out of changes in law as "extraordinary and compelling reasons." For all the reasons discussed above, neither the Sentencing Reform Act nor the First Step Act prohibits the Commission from invoking its authority under section 994(t) to recognize changes in law as one factor within a combination of factors that could present an extraordinary and compelling reason for a sentence reduction. The policy statement is consistent with the Commission's longstanding authority under the Sentencing Reform Act to expand the examples of "extraordinary and compelling reasons" in

30

policy statements. Further, section 1B1.13(b)(6) reflects the Commission's studied, commonsense conclusion that, in some cases involving unusually long sentences, a change in law *may* create a disparity so severe or unjustified that it warrants considering a sentence reduction, depending on the defendant's individual circumstances.

Citing the minority of Commissioners who voted against the amendment, the government has contended in district court filings in this Circuit that section 1B1.13(b)(6) contravenes separation-of-powers principles by supplanting Congress' legislative power to establish criminal penalties.[19] That argument does not withstand scrutiny. No one disputes that Congress may restrict, or even eliminate, the Commission's authority to describe intervening changes in law as potential grounds for compassionate release. But Congress has not done that. To the contrary, Congress granted the Commission wide discretion (since left untouched) to describe "extraordinary and compelling reasons" for compassionate release.

Given this express congressional delegation, the Commission's allowing courts to consider changes in law, within a larger discretionary analysis, as

---

[19] *See, e.g.*, Gov't Opp'n to Mot. Reduce Sentence at 18-19, 35-36, *United States v. Crews*, No. 10-cr-663 (E.D. Pa. Nov. 27, 2023), ECF No. 778.

potentially presenting a reason for compassionate release despite nonretroactivity does not tread on Congress' legislative role any more than considering a defendant's old age, declining health, or other personal circumstances, despite the fact that the defendant was sentenced under a statute that lacked special solicitude for those circumstances. Congress can both decide against categorical retroactivity *and* empower the Commission to decide whether and when changes in law can create extraordinary and compelling reasons for compassionate release on an individualized basis. Respect for separation of powers demands that Congress, not courts, determine how to balance the competing considerations underlying these legislative decisions. *See Epic Sys.*, 584 U.S. at 510-11.

The Commission has done what Congress entrusted it, above all others, to do. *See* 28 U.S.C. § 994(a)(2)(C), (t). Consistent with "[t]he extraordinary powers and responsibilities vested in the Commission," S. Rep. No. 98-225, at 160, and the information-gathering tools Congress specified, *see* 28 U.S.C. § 995(a), the Commission consulted authorities and collected data. It then promulgated proposed amendments to its policy statement, considered and addressed substantial public comments, and submitted its proposal to Congress for review.

Moreover, the newly revised section 1B1.13(b)(6) advances the purposes Congress specified to guide the Commission's decisionmaking. One of the Commission's express purposes is to "avoid[] unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar criminal conduct while maintaining sufficient flexibility to permit individualized sentences when warranted." 28 U.S.C. § 991(b)(1)(B). Section 1B1.13(b)(6) accomplished this purpose by targeting gross sentencing disparities while emphasizing full consideration of the defendant's individualized circumstances. Another purpose Congress gave the Commission is to "reflect . . . advancement in knowledge of human behavior as it relates to the criminal justice process." *Id.* § 991(b)(1)(C). Congress contemplated that the Commission would update its description of "extraordinary and compelling reasons" to reflect evolving norms and understandings of criminal justice, as the Commission has done here.

In the forty years since Congress created the Sentencing Commission, our nation's criminal justice system has come to depend greatly upon it, including to implement landmark sentencing reform legislation such as the Sentencing Reform Act and the First Step Act. No reason exists to invalidate the Commission's efforts here.

## CONCLUSION

For the foregoing reasons, Senators Booker and Durbin respectfully request that this Court vacate and remand for further proceedings.

Respectfully submitted,

*/s/ Amy Mason Saharia*
AMY MASON SAHARIA
(DC Bar No. 981644)
    *Counsel of Record*
DANIELLE SOCHACZEVSKI
ERIN L. BROWN
JONATHAN E. SPRATLEY*
WILLIAMS & CONNOLLY LLP
    *680 Maine Avenue SW*
    *Washington, DC 20024*
    *(202) 434-5000*
    *asaharia@wc.com*

FEBRUARY 7, 2024

---

*Admitted in New York and practicing law in the District of Columbia pending application for admission to the D.C. Bar under the supervision of bar members pursuant to D.C. Court of Appeals Rule 49(c)(8).

# COMBINED CERTIFICATIONS

1. **Bar Membership**:  I certify that I am a member of this Court's Bar.

2. **Word Count, Typeface, and Type Style:**  I certify that this brief complies with the type-volume limitations of Federal Rule of Appellate Procedure 29(a)(5) because the brief was produced using Microsoft Word and it contains 6,410 words, excluding those portions excluded by Rule 32(f).  I further certify that this brief complies with the typeface requirements of Rule 32(a)(5) and type style requirements of Rule 32(a)(6) because it has been prepared in the proportionally spaced typeface, Century Expanded BT, size 14.

3. **Service.**  I certify that on this date I am causing this brief to be filed electronically via the Court's CM/ECF system.  All participants are registered CM/ECF users and service will be accomplished using the CM/ECF system.

4. **Paper copies.**  I certify that the text of the electronic brief filed via ECF is identical to the text of the paper copies that will be delivered to the Court.

5. **Virus check.**  I certify that I have caused a virus check to be performed using the latest version of Symantec Endpoint Protection, Version 14.

*/s/ Amy Mason Saharia*

AMY MASON SAHARIA

FEBRUARY 7, 2024